Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

David N. Sneed (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662 5027
Facsimile: (202) 778-5027
Email: dsneed@cov.com

Isaac D. Chaput (Bar No. 326923)
Amy S. Heath (Bar No. 312516)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: ichaput@cov.com
Email: aheath@cov.com

*Attorneys for Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| "AMY" and "JESSICA," on behalf of themselves and others similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>APPLE INC.<br><br>     Defendant. | Civil Case No.: 5:24-cv-08832-EKL<br><br>**DEFENDANT APPLE INC.'S MOTION TO DISMISS COMPLAINT**<br><br>Date: May 14, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 7<br>Judge: The Honorable Eumi K. Lee |

# TABLE OF CONTENTS

I.      INTRODUCTION AND STATEMENT OF THE ISSUES............................................1

II.     BACKGROUND ..............................................................................................................3

    A.      iCloud, iMessage, Apple Devices, and Safety Features ......................................3

    B.      Scanning iCloud for CSAM ..................................................................................3

    C.      Plaintiffs' Images Are Disseminated by Bad Actors Across the Internet.............4

III.    LEGAL STANDARD ......................................................................................................5

IV.     ARGUMENT ....................................................................................................................5

    A.      Plaintiffs Lack Article III Standing......................................................................6

    B.      Section 230 of the Communications Decency Act Bars All of Plaintiffs' Claims. ............6

        1.      iCloud Is an Interactive Computer Service...............................................7

        2.      CSAM Is Third-Party Content. .................................................................9

        3.      Plaintiffs' Claims Treat Apple as a Publisher or Speaker........................9

    C.      Plaintiffs Have Not Plausibly Pleaded a CSAM Claim (Claim I). ....................13

    D.      The State-Law Claims Fail to Plead Which State's Law They Invoke (Claims II–V)......15

    E.      Plaintiffs Have Not Plausibly Pleaded a Product Liability Claim (Claim II). ...................15

    F.      Plaintiffs Cannot Bring a Negligence Per Se Claim (Claim III)........................18

    G.      Plaintiffs Have Not Plausibly Pleaded a Negligence Claim (Claim IV). ..........19

    H.      Plaintiffs Have Not Plausibly Pleaded a Misrepresentation Claim (Claim V). .................20

        1.      The Complaint Fails to Identify Any Actionable Misrepresentation....................21

        2.      The Complaint Fails to Plead that Either Named Plaintiff Actually or Justifiably Relied on Any Statements.................................................22

        3.      The Complaint Fails to Plead Causation or Resulting Damages. ...........23

    I.      Plaintiffs Cannot Establish that Apple Proximately Caused Their Injuries (Claims II–V). ...................................................................................23

V.      CONCLUSION...............................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Apex Directional Drilling, LLC v. SHN Consulting Eng'rs & Geologists, Inc.*,
119 F. Supp. 3d 1117 (N.D. Cal. 2015) ..................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................................5

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ..................................................................................... *passim*

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024) ...............................................................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..............................................................................................................5

*Brown v. USA Taekwondo*,
483 P.3d 159 (Cal. 2021) ....................................................................................................20

*California v. Texas*,
593 U.S. 659 (2021) ..............................................................................................................6

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) ..................................................................................... *passim*

*Camacho v. JLG Indus. Inc.*,
93 Cal. App. 5th 809 (2023) ...............................................................................................23

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ..............................................................................................7

*Cohen v. Facebook, Inc.*,
252 F. Supp. 3d 140 (E.D.N.Y. 2017) ................................................................................13

*Crosby v. Twitter, Inc.*,
921 F.3d 617 (6th Cir. 2019) ..............................................................................................24

*Daniels v. Select Portfolio Servicing, Inc.*,
246 Cal. App. 4th 1150 (2016) ...........................................................................................21

*Diez v. Google, Inc.*,
831 F. App'x 723 (5th Cir. 2020) ........................................................................................12

*Dinan v. Sandisk LLC*,
2019 WL 2327923 (N.D. Cal. May 31, 2019) ....................................................................22

*Doe v. Bates*,
    2006 WL 3813758 (E.D. Tex. Dec. 27, 2006)........................................................12

*Doe v. Internet Brands, Inc.*,
    824 F.3d 846 (9th Cir. 2016) ........................................................................................2

*Doe v. Mindgeek USA Inc.*,
    558 F. Supp. 3d 828 (C.D. Cal. 2021) ........................................................................19

*Doe v. MySpace, Inc.*,
    474 F. Supp. 2d 843 (W.D. Tex. 2007)........................................................................20

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) ......................................................................................10

*Doe v. Reddit, Inc.*,
    2021 WL 4348731 (C.D. Cal. July 12, 2021)........................................10, 11, 12, 13

*Doe v. Snap, Inc.*,
    2022 WL 2528615 (S.D. Tex. July 7, 2022)................................................................11

*Doe v. Twitter, Inc.*,
    555 F. Supp. 3d 889 (N.D. Cal. 2021) ........................................................................19

*Does #1-50 v. Salesforce.com, Inc.*
    2021 WL 6143093 (Cal. Ct. App. Dec. 30, 2021) ........................................................8

*Durden v. United States*,
    736 F.3d 296 (4th Cir. 2013) ......................................................................................20

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ...............................................................................7, 20

*Est. of B.H. v. Netflix, Inc.*,
    2022 WL 551701 (N.D. Cal. Jan. 12, 2022) ..............................................................17

*In re Facebook, Inc.*,
    625 S.W.3d 80 (Tex. 2021)....................................................................................11, 12

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) .........................................................................7, 8, 9, 11

*Fields v. Twitter, Inc.*,
    217 F. Supp. 3d 1116 (N.D. Cal. 2016) ....................................................................8, 9

*Fields v. Twitter, Inc.*,
    881 F.3d 739 (9th Cir. 2018) ......................................................................................24

*Flores v. Uber Techs.*,
    2022 Cal. Super. LEXIS 9648 (Cal. Super. Ct. Mar. 22, 2022) ................................16

iv

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019)........................................................................................7

*Gavra v. Google Inc.*,
    2013 WL 3788241 (N.D. Cal. July 17, 2013)..........................................................20

*Green v. Am. Online (AOL)*,
    318 F.3d 465 (3d Cir. 2003)....................................................................................10

*Hannan v. Bos. Sci. Corp.*,
    2020 WL 2128841 (N.D. Cal. May 5, 2020)............................................................21

*Herrick v. Grindr, LLC*,
    306 F. Supp. 3d 579 (S.D.N.Y. 2018)..............................................................11, 13

*Hoff v. Vacaville Unified Sch. Dist.*,
    968 P.2d 522 (Cal. 1998).........................................................................................18

*Humphries v. Newman*,
    2022 WL 612657 (D.D.C. Mar. 2, 2022).................................................................19

*Jackson v. Airbnb, Inc.*,
    639 F. Supp. 3d 994 (C.D. Cal. 2022).....................................................................16

*Jacobs v. Meta Platforms, Inc.*,
    2023 WL 2655586 (Cal. Super. Ct. Mar. 10, 2023) ..........................................15, 16

*James v. Meow Media, Inc.*,
    300 F.3d 683 (6th Cir. 2002)...............................................................................17, 20

*Johnson v. Glock, Inc.*,
    2021 WL 428635 (N.D. Cal. Feb. 8, 2021) .............................................................22

*Johnson v. Honeywell Int'l Inc.*,
    179 Cal. App. 4th 549 (2009) ..................................................................................18

*Jones v. Awad*,
    39 Cal. App. 5th 1200 (2019) ..................................................................................18

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .............................................................................5, 21

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) .....................................................................................5

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ...............................................................................7, 8

*L.W. v. Snap Inc.*,
    675 F. Supp. 3d 1087 (S.D. Cal. 2023).............................................................. *passim*

*Langley v. Guiding Hands Sch., Inc.*,
   2021 WL 1212713 (E.D. Cal. Mar. 31, 2021) ..................................................................16

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
   350 F.3d 1018 (9th Cir. 2003) .........................................................................................6

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ..........................................................................................................6

*Modisette v. Apple Inc.*,
   30 Cal. App. 5th 136 (2018) ....................................................................................12, 24

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*,
   171 Cal. App. 4th 35 (2009) ......................................................................................21, 22

*Novak v. Cont'l Tire N. Am.*,
   22 Cal. App. 5th 189 (2018) ...........................................................................................23

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)...........................................................................................................6

*of C.H. v. Omegle.com LLC*,
   122 F.4th 1266 (11th Cir. 2024) .....................................................................................15

*Osborn v. Irwin Mem'l Blood Bank*,
   5 Cal. App. 4th 234 (1992) .............................................................................................23

*People v. Jones*,
   105 Cal. App. 5th 83 (2024) ...........................................................................................23

*Peredia v. HR Mobile Servs., Inc.*,
   25 Cal. App. 5th 680 (2018) ...........................................................................................23

*Pierson v. Sharp Mem'l Hosp., Inc.*,
   216 Cal. App. 3d 340 (1989) ..........................................................................................16

*Social Media Cases*,
   2023 WL 6847378 (Cal. Super. Ct. Oct. 13, 2023) .......................................................16

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)...........................................................................................................6

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   580 F. Supp. 2d 896 (N.D. Cal. 2008) ............................................................................15

*Terpin v. AT&T Mobility, LLC*,
   399 F. Supp. 3d 1035 (C.D. Cal. 2019) ..........................................................................23

*Twitter, Inc. v. Taamneh*,
   598 U.S. 471 (2023)..........................................................................................................14

*United States v. Budziak*,
   697 F.3d 1105 (9th Cir. 2012) ......................................................................................14

*United States v. Lacy*,
   119 F.3d 742 (9th Cir. 1997) ........................................................................................14

*United States v. Stitz*,
   877 F.3d 533 (4th Cir. 2017) ........................................................................................14

*United States v. X-Citement Video, Inc.*,
   513 U.S. 64 (1994)........................................................................................................14

*Washington Env't Council v. Bellon*,
   732 F.3d 1131 (9th Cir. 2013) ........................................................................................6

*Winter v. G.P. Putnam's Sons*,
   938 F.2d 1033 (9th Cir. 1991) ................................................................................16, 17

*Zetz v. Bos. Sci. Corp.*,
   398 F. Supp. 3d 700 (E.D. Cal. 2019)....................................................................21, 22

*Ziencik v. Snap, Inc.*,
   2023 WL 2638314 (C.D. Cal. 2023)............................................................................16

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
   525 F. Supp. 3d 1017 (N.D. Cal. 2021)..................................................8, 10, 12, 13

**Statutes**

18 U.S.C. § 2252 ..........................................................................................................13, 14

18 U.S.C. § 2258A ..................................................................................13, 15, 17, 18, 19

18 U.S.C. § 2258B ..............................................................................................13, 17, 18, 19

18 U.S.C. § 2258E ............................................................................................................17

47 U.S.C. § 230 ................................................................................................... *passim*

Cal. Civ. Code § 1714.45(c) ............................................................................................15

**Other Authorities**

2 Owen & Davis on Prods. Liab., § 17:28 (Mary J. Davis, ed., 4th ed., May 2024 Update) ..................16

Fed. R. Civ. P. 8 ..............................................................................................................21

Fed. R. Civ. P. 9(b) ................................................................................................5, 21, 22

Fed. R. Civ. P. 12(b)(6)....................................................................................................5

Restatement (Second) of Torts § 402A (Am. L. Inst. 1965)........................................................16

Restatement (Third) of Torts: Prod. Liab., § 19 (Am. L. Inst. 1998) ..................................16, 17

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that, on May 14, 2025 at 10:00 a.m., Defendant Apple Inc. will and hereby does move for an order dismissing with prejudice Plaintiffs' Complaint (Dkt. 1) under Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6).  This Motion is based on this Notice; the Memorandum of Points and Authorities; the Complaint; and any other matters presented at the time of the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION AND STATEMENT OF THE ISSUES

Plaintiffs allege that, when they were minors in the early 2000s, years before Apple developed and made its iCloud service available to the public, third-party bad actors created child sexual abuse material ("CSAM") of them, which has recirculated online since.  They allege that some bad actors today use iCloud to store and disseminate CSAM generally.  CSAM is abhorrent, and Apple has worked hard to fight the spread of CSAM on its services.

Based solely on Apple operating iCloud (and creating devices that can access iCloud, like iPhones and iPads), the Complaint seeks to hold Apple liable for allegedly knowingly receiving, sending, or possessing CSAM in violation of federal criminal law, and for product liability, negligence, and negligence per se claims.  And it seeks to hold Apple liable for negligent misrepresentation because Apple proposed developing a technology that it had hoped could detect known CSAM while preserving users' privacy and security but—after extensive consultation with human rights organizations, privacy and security technologists, child safety advocates, and academics—ultimately pursued and deployed different measures to thwart the spread of CSAM.  In so doing, Apple endeavored to avoid risks that scanning technologies pose to users' security and privacy, such as by opening the door for universal surveillance of communications and storage systems that hold data pertaining to the most private affairs of Apple's users. Neither Apple's decision to shift its approach nor Plaintiffs' disagreement with Apple's decisions is a basis for liability, and the Court should dismiss the Complaint.

As threshold issues, Plaintiffs lack Article III standing and Section 230 of the Communications Decency Act ("CDA") bars all of Plaintiffs' claims.  As for standing, Plaintiffs do not allege that any CSAM depicting either named Plaintiff was stored on or disseminated using iCloud, so they have not

pleaded an injury fairly traceable to Apple's alleged conduct.  And Plaintiffs' claims are premised entirely on third-party content, but Section 230 was enacted to "protect[] websites from liability for material posted on the website by someone else," *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850 (9th Cir. 2016), and bars claims against technology companies for decisions regarding "reviewing" and "deciding whether to publish or to withdraw from publication third-party content," *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009).  That is precisely what Plaintiffs seek to hold Apple liable for here: allegedly not monitoring for, vetting, and removing specific content placed by third parties on iCloud.

Plaintiffs' claims also are all inadequately pleaded.  Plaintiffs fail to allege which state's law applies to their common law claims, requiring dismissal.  The federal CSAM claim fails both because there is no allegation that Apple (as opposed to third-party bad actors) ever sent, received, or possessed the CSAM depicting *Plaintiffs*, and because there is no allegation (let alone support for an allegation) that Apple knew of any of that CSAM, as Plaintiffs' federal claim requires.  The product liability claim is inapplicable because iCloud—an intangible service—is not a "product" for purposes of product liability law; to the extent Plaintiffs reference tangible devices like iPhone, they fail to allege how they are defectively designed, or even relevant to these iCloud-based claims.  The negligence claim fails for lack of causation and resulting damages, and for lack of a cognizable duty.  The negligence per se claim is not a recognized claim under California law; even if it were, this is an improper attempt to create a private right of action under the federal CSAM reporting statute that only allows for government enforcement.  Moreover, Plaintiffs do not allege a violation of the reporting statute: there is no well-pleaded allegation that Apple failed to report CSAM about which Apple had actual knowledge, and the statute expressly does not (contrary to Plaintiffs' contention) obligate companies to search for CSAM.  The negligent misrepresentation claim fails to allege any misrepresentation (let alone an actionable one) and Plaintiffs fail to plead reliance, causation, or damages (let alone with particularity).  All of the state-law claims fail for the additional reason that, as a matter of law, the third-party criminals who create and share CSAM, not Apple, proximately caused Plaintiffs' alleged injuries.

Because amendment would not cure these flaws, the Complaint should be dismissed with prejudice.

## II.    BACKGROUND[1]

### A.    iCloud, iMessage, Apple Devices, and Safety Features

iCloud is a service that securely stores users' photos, files, notes, and other data in the cloud and synchronizes it across devices.  *See* Compl. ¶¶ 41, 46–47, 50–51.  iCloud is also a website, which allows users to access their iCloud data.  *Id.* ¶ 56.  iMessage is a secure messaging service that allows Apple device users to send and receive texts, images, videos, and audio messages.  *Id.* ¶ 31.  Messages sent using iMessage are end-to-end encrypted between devices.  iPhone, iPad, and MacBook are, respectively, smartphones, tablets, and portable notebook computers through which users can access iCloud, iMessage, and the internet.  *See id.* ¶¶ 29, 31, 39.

To protect users' privacy and security, iCloud data is encrypted.  *Id.* ¶¶ 47–53.  Users have the choice between two levels of data protection.  *Id.* ¶ 49.  With Standard Data Protection, iCloud data is encrypted but the encryption keys are secured in Apple data centers, so Apple can decrypt users' data on their behalf whenever they need it, such as for data recovery.  *Id.* ¶ 50.  For additional privacy and security, certain data categories (such as Health data) are end-to-end encrypted, meaning the encryption keys are stored only on users' devices, and so Apple cannot access the data.  *See* APPLE, *iCloud Data Security Overview*, https://support.apple.com/en-us/102651 (last accessed Feb. 6, 2025) (cited in Compl. ¶ 48 n.7). With Advanced Data Protection, other data categories (such as iCloud Backup and Photos) are also end-to-end encrypted and "thereby protected."  Compl. ¶ 51.  Data that is end-to-end encrypted would remain secure even if there were a data breach in the cloud.  *See iCloud Data Security Overview*.  The iCloud Terms & Conditions prohibit users from using iCloud to "engage in any illegal activity" or to "upload, . . . transmit, store, [or] share . . . any Content that is unlawful, harassing, threatening, harmful, . . . obscene, vulgar, . . . or otherwise objectionable."    iCloud Terms & Conditions at Section V.B, https://www.apple.com/legal/internet-services/icloud/ (last accessed Feb. 6, 2025).

### B.    Scanning iCloud for CSAM

The Complaint alleges that, in August 2021, at the same time Apple announced other measures to thwart the spread of CSAM, it also announced that it was considering introducing a new technology to

---

[1] For this Motion, Apple accepts as true, without conceding, the factual allegations in the Complaint.

scan iCloud photos for already-known CSAM using hash-matching.  *See* Compl. ¶¶ 76–80.  One month later, Apple "announced that it would delay its initial . . . rollout" of that potential scanning technology.  *Id.* ¶ 118.  Apple "consulted extensively with child safety advocates, human rights organizations, privacy and security technologists, and academics, and having considered scanning technology from virtually every angle, [it] concluded it was not practically possible to implement without ultimately imperiling the security and privacy of [its] users."  Email from E. Neuenschwander (Aug. 31, 2023), available at https://s3.documentcloud.org/documents/23933180/apple-letter-to-heat-initiative.pdf (cited in Compl. ¶ 123 & n.27).  As a document cited in the Complaint explains, "[s]canning of personal data in the cloud is regularly used by companies to monetize the information of their users.  While some companies have justified those practices, [Apple has] chosen a very different path—one that prioritizes the security and privacy of our users.  Scanning every user's privately stored iCloud content would in our estimation pose serious unintended consequences for our users."  *Id.*  In particular, "[s]canning every user's privately stored iCloud data would create new threat vectors for data thieves to find and exploit" and would "inject the potential for a slippery slope of unintended consequences" such as "open[ing] the door for bulk surveillance."  *Id.*  And "[s]canning systems are also not foolproof and there is documented evidence from other platforms that innocent parties have been swept into" them.  *Id.*  As a result, in December 2022, Apple "announced it would not implement" this iCloud scanning proposal.  Compl. ¶ 122.

### C.    Plaintiffs' Images Are Disseminated by Bad Actors Across the Internet

Plaintiffs—who are proceeding under pseudonyms—were exploited when they were minors in the early 2000s by adult relatives to "produce CSAM to share on the internet."  *Id.* ¶¶ 143, 148.  Both of them were depicted in CSAM "series" that have been included in "thousands" of submissions to the National Center for Missing & Exploited Children ("NCMEC") since the "early 2000s."  *Id.* ¶ 139, 144.  They allege without elaboration that third-party bad actors "received, possessed, and distributed" CSAM images of them "using Apple products," but they do not allege any specific facts even suggesting that Apple products were involved in the distribution of the CSAM images of them.  *See id.* ¶ 152.  Plaintiffs also

allege that other members of the putative class had CSAM depicting them disseminated by third-party bad actors via unspecified means. *See, e.g.*, *id.* ¶¶ 154–63.[2]

## III.    LEGAL STANDARD

To state a plausible claim for relief, a plaintiff must allege "sufficient factual matter" that, taken as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A "formulaic recitation of the elements" of a claim is not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 681. And where a plaintiff alleges insufficient facts or makes allegations that disprove or demonstrate the implausibility of the asserted claim, dismissal is proper. *See, e.g.*, *Twombly*, 550 U.S. at 570. In addition, a plaintiff alleging claims sounding in fraud "must state with particularity the circumstances constituting fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (cleaned up). When deciding a Rule 12(b)(6) motion, the Court may consider documents that are incorporated by reference in the complaint or subject to judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## IV.    ARGUMENT

Plaintiffs lack Article III standing because they do not plead any injuries that are fairly traceable to Apple's alleged conduct: they do not allege that CSAM *of either named Plaintiff* was stored on or disseminated via iCloud. Their claims are also barred by Section 230 of the CDA because they seek to hold Apple liable for allegedly not monitoring for, vetting, and removing third-party content. Even aside from those threshold issues, the claims are inadequate on their own terms for multiple independent reasons. At their core, they seek to hold Apple liable for harm caused by third-party bad actors solely because Apple provided iCloud—a generally accessible online storage platform—to internet users, some

---

[2] The Complaint includes a stray allegation that "Apple could have utilized cost-effective, reasonably feasible alternative designs, including algorithmic changes and changes to the addictive features described above." Compl. ¶ 203. That allegation appears to have been inadvertently included in this Complaint, which is not about algorithmic recommendations or "addictive features."

of whom allegedly misused it contrary to its terms of service and U.S. law.  That is a dramatic and unprecedented expansion of federal CSAM law and state tort law.

### A.    Plaintiffs Lack Article III Standing.

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).  In a putative class action, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).  To adequately plead Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016) (citations omitted).  On the second element of traceability, a complaint must sufficiently draw a "line of causation between the defendant's action and the plaintiff's harm" that is not "attenuated" or "hypothetical." *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013) (cleaned up).

Here, both named Plaintiffs fail to plead that their alleged injuries are in any way traceable to Apple's alleged conduct: neither named Plaintiff alleges that CSAM depicting her was ever stored on or disseminated using iCloud.  Plaintiffs generally plead that some bad actors spread CSAM using the internet, including iCloud, but they never plead that CSAM depicting *them* was stored on iCloud specifically.  Similarly, while they plead that iCloud was used to store various pieces of CSAM in criminal cases, Compl. ¶ 153, they do not allege that those cases concerned CSAM depicting either Plaintiff.  As a result, there is no indication that Plaintiffs' alleged harm is traceable to Apple's alleged conduct of not scanning iCloud for CSAM. *See, e.g.*, *id.*; *see also California v. Texas*, 593 U.S. 659, 671 (2021) (holding that traceability requirement was not met because "[h]ere, there is no action—actual or threatened—whatsoever" by defendant that allegedly caused harm).  Because the Complaint fails to plead traceability, Plaintiffs lack Article III standing.

### B.    Section 230 of the Communications Decency Act Bars All of Plaintiffs' Claims.

Section 230 of the CDA bars Plaintiffs' claims, each of which seeks to impose liability on Apple

1    for whether and how it monitors for and prevents content that third parties store and share using iCloud.

2    Under Section 230, "[n]o provider . . . of an interactive computer service shall be treated as the publisher

3    or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).

4    There also is a broad preemption provision: "[n]o cause of action may be brought and no liability may be

5    imposed under any State . . . law that is inconsistent with this section."  *Id.* § 230(e)(3).

6        "Congress made a policy choice not to deter harmful online speech through the separate route of

7    imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious

8    messages."  *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (cleaned up).  As a

9    result, Section 230 "should be construed broadly in favor of immunity."  *Force v. Facebook, Inc.*, 934

10   F.3d 53, 64 (2d Cir. 2019) (collecting cases); *see also Fair Hous. Council of San Fernando Valley v.*

11   *Roommates.Com, LLC*, 521 F.3d 1157, 1174–75 (9th Cir. 2008) (en banc) (narrow reading would "cut the

12   heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims

13   that they promoted or encouraged—or at least tacitly assented to—the illegality of third parties").

14       Under the Ninth Circuit's three-part Section 230 test, immunity exists for "(1) a provider or user

15   of an interactive computer service [("ICS")] (2) whom a plaintiff seeks to treat, under a state law cause of

16   action, as a publisher or speaker (3) of information provided by another information content provider."[3]

17   *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (cleaned up).  All three prongs

18   are satisfied here.

19                1.        **iCloud Is an Interactive Computer Service.**

20       Under the first prong of Section 230, "[t]he term 'interactive computer service' means any

21   information service, system, or access software provider that provides or enables computer access by

22   multiple users to a computer server, including specifically a service or system that provides access to the

23   Internet[.]"  47 U.S.C. § 230(f)(2).  iCloud[4] falls squarely within this definition, which is to be

24   "interpret[ed] expansively," *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (cleaned up), for

25

26   _____

     [3] Section 230 immunity also applies to federal civil claims, with exceptions that do not apply here.  *See*
     47 U.S.C. § 230(e).

27   [4] iMessage also is an ICS for Section 230 purposes.  Apple does not understand Plaintiffs to challenge

28   iMessage, but if the Opposition argues otherwise, Apple reserves the right to address those arguments.

at least three reasons:

To start, iCloud enables multiple users to access a computer server.   In *Does #1-50 v. Salesforce.com, Inc.*, for example, the California Court of Appeal held that Salesforce's software allowed multiple users to access a server where it "included a secure cloud storage database."  2021 WL 6143093, at *6 (Cal. Ct. App. Dec. 30, 2021) (unpublished) (cleaned up).  Here, the Complaint alleges that bad actors can "spread" CSAM using iCloud, Compl. ¶¶ 129, 152, which necessarily means multiple users access the same iCloud servers to access that content.  Courts routinely apply Section 230 when a service permits multiple users to exchange information.  *See, e.g.*, *L.W. v. Snap Inc.*, 675 F. Supp. 3d 1087, 1095 (S.D. Cal. 2023) (Snapchat is an ICS because it "permits its users to share photos and videos through [the company's] servers and the internet" (cleaned up)); *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1128 (N.D. Cal. 2016) (*Fields I*)*, aff'd*, 881 F.3d 739 (9th Cir. 2018) (*Fields II*) (collecting cases); *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1030 (N.D. Cal. 2021) (similar).

iCloud is also a service that "provides access to the Internet."  47 U.S.C. § 230(f)(2).  The Complaint alleges that iCloud is a service used to store material via the internet, and that users can then access that data "across multiple devices" because it is "store[d] . . . on remote computer servers."  Compl. ¶ 41; *see also id.* ¶ 14 ("Each Plaintiff was sexually abused as a child, with such sexual abuse depicted in CSAM circulating on the internet worldwide, including on Apple devices and iCloud.").  For this reason alone, iCloud qualifies as an ICS.  *See, e.g.*, *L.W.*, 675 F. Supp. 3d at 1095.

Finally, iCloud is, among other things, a website, and "the most common interactive computer services are websites."  *Roommates*, 521 F.3d at 1162 n.6.  The Complaint alleges that iCloud can be accessed through the website "iCloud.com." Compl. ¶56.  A website like iCloud.com is a prototypical example of an ICS.  *See, e.g.*, *Kimzey*, 836 F.3d at 1268 (Yelp website qualifies).

Although the Complaint at various points refers to Apple's "products," apparently encompassing by implication iCloud as well as devices like the iPhone, iPad, and MacBook, Plaintiffs' claims squarely focus on Apple's alleged failure to sufficiently monitor material stored in iCloud for CSAM, making iCloud the relevant service for purposes of Section 230.  *See, e.g.*, Compl. ¶¶ 60 (alleging that iCloud is the platform used for distributing CSAM), 70 (alleging that Apple does not use PhotoDNA to scan iCloud), 76 (discussing Apple's announcement of considering "CSAM Detection in iCloud Photos"), 77 (alleging

that NeuralHash operates "in iCloud"), 83 ("Apple's NeuralHash was purportedly designed to detect known CSAM on physical Apple devices (e.g., iPhone, MacBook, iPad) at the moment the device connects to iCloud, but not a moment sooner.  Apple claimed that NeuralHash was designed to operate in a fully encrypted environment and, thus, the tool would detect child pornography material on a device only after it is connected to iCloud.").  The purported design alternatives that Plaintiffs advance also focus on iCloud.  *See, e.g.*, *id.* ¶ 203 (arguing that alternative designs include "[i]mplementing pro-active CSAM detection measures and systems on iCloud").  iPhone, iPad, and MacBook are merely devices bad actors may allegedly have used to view or share CSAM, just as any smartphone or computer can be used to view or share material online.

### 2.    CSAM Is Third-Party Content.

The third-party content prong of the Section 230 inquiry is also readily satisfied here, as the CSAM depicting Plaintiffs is "information provided by another"—the Plaintiffs' relatives or other third-party bad actors who created and disseminated the CSAM—not created by Apple.  *See* Compl. ¶¶ 142, 148.  Nothing in the Complaint suggests otherwise.

### 3.    Plaintiffs' Claims Treat Apple as a Publisher or Speaker.

The final prong is also met: Plaintiffs' claims treat Apple as a publisher or speaker of the bad actors' CSAM content because those claims would hold Apple liable for not monitoring for, reviewing, and removing that content from iCloud.  In analyzing the third prong, "what matters is not the name of the cause of action," but rather "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another."  *Barnes*, 570 F.3d at 1101–02.  In turn, "publication" includes "reviewing" and "deciding whether to publish or to withdraw from publication third-party content."  *Id.* at 1102.  It also includes "features that are part and parcel of the overall design and operation of the website."  *Fields I*, 217 F. Supp. 3d at 1124 (cleaned up).  Ninth Circuit law is clear: "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."  *Roommates*, 521 F.3d at 1170–71.  Section 230 immunity attaches whenever the duty the claims seek to impose "obliges the defendant to monitor third-party content—or else face liability."  *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 742 (9th Cir. 2024) (cleaned up); *see also L.W.*, 675 F. Supp. 3d at 1097 (Section 230 barred claims based on

Snapchat's availability on the App Store).

Courts routinely find that claims seeking to hold providers liable for bad actors' distribution of CSAM are subject to Section 230 immunity. As one court explained in a case involving the alleged failure to prevent CSAM distribution, Section 230 applied "[b]y definition" because the "theories of liability plainly turn on Defendants' alleged failure to monitor and remove third-party content." *L.W.*, 675 F. Supp. 3d at 1096. The alleged "failure to remove CSAM distributed on [Defendant's platform] by third parties . . . involve[s] reviewing and deciding whether to publish or to withdraw from publication third-party content." *Id.* (cleaned up). As another court explained, an operator of a platform that "merely provided neutral tools for navigating its service" is immunized by Section 230 even where third parties distribute disturbing content using that service: "appalling as this content is, [the defendant's] failure 'to edit or block user-generated content' is the very activity Congress sought to immunize." *Zoom*, 525 F. Supp. 3d at 1035 (cleaned up). Or as a third said, claims that a service provider "permitt[ed] users to upload videos and images of Plaintiffs (and/or their daughters)," enabled "distribution of private sexually explicit materials [that] stem[] from users being permitted to upload the relevant videos and images," and "knowingly tolerat[ed] [CSAM] on its website" were all "readily" barred by Section 230 and a "quintessential" case for applying it. *Doe v. Reddit, Inc.*, 2021 WL 4348731, at *3 (C.D. Cal. July 12, 2021) (cleaned up).

The Ninth Circuit has held that Section 230 provides immunity for claims—like those Plaintiffs assert here—that would require the platform to "actively vet and evaluate third-party" content. *Calise*, 103 F.4th at 744 (negligence, unjust enrichment, and UCL claims barred); *see also Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (Section 230 barred claims seeking to hold MySpace liable for "failure to implement measures that would have prevented" minor from communicating with abuser as they were "merely another way of claiming that MySpace was liable for publishing the communications"); *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003) (Section 230 barred liability for "decisions relating to the monitoring, screening, and deletion of content from its network" because they are "quintessentially related to a publisher's role").

Just so here. Each of Plaintiffs' claims would impermissibly treat Apple as a publisher or speaker of third-party content: they would require Apple to monitor that third-party content by searching for

10

apparent CSAM on its services, as explained below.  That is a core content moderation decision, and the heartland of what Section 230 immunizes.  *See Calise*, 103 F.4th at 744; *Roommates*, 521 F.3d at 1170–71.

a)    **Product Liability and Negligence Claims**

Although the Complaint does not allege a precise "defect" in iCloud, the core of Plaintiffs' design-defect claim appears to be that Apple did not prevent third parties from uploading, storing, and sharing CSAM on iCloud.  *See, e.g.*, Compl. ¶¶ 201 (alleging that the defect is that Apple "fail[ed] to stop the spread and circulation of CSAM depicting the Plaintiffs"), 203 (alleging that design alternatives include "CSAM detection measures").  Similarly, though not clear, that same alleged fault appears to form the core of Plaintiffs' negligence claim: that Apple allegedly failed to exercise reasonable care when it did not prevent Plaintiffs' relatives or other third parties from uploading, storing, and sharing CSAM.  *See, e.g.*, *id.* ¶¶ 234–35.

Imposing liability on this basis is precisely what Section 230 prohibits.  *See Barnes*, 570 F.3d at 1103 ("removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove").  These claims would impermissibly impose a duty on Apple to "vet and evaluate third-party" content.  *See Calise*, 103 F.4th at 744.  These are the type of CSAM claims that courts have repeatedly held subject to Section 230 immunity.  *See, e.g.*, *L.W.*, 675 F. Supp. 3d at 1096; *Reddit*, 2021 WL 4348731, at *3.  The Court should reach the same conclusion here.

Plaintiffs cannot avoid Section 230 by arguing their claims would hold Apple liable for its own actions or its own alleged lack of safety features.  *See, e.g.*, *L.W.*, 675 F. Supp. 3d at 1096; *Doe v. Snap, Inc.*, 2022 WL 2528615, at *14 (S.D. Tex. July 7, 2022), *aff'd* 2023 WL 4174061 (5th Cir. June 26, 2023) (Section 230 barred negligent design claim based on "allow[ing] messages to automatically delete").  That still seeks to impose liability on Apple for not reviewing third-party content or changing its own design for how third parties may store and share content.  *See, e.g.*, *In re Facebook, Inc.*, 625 S.W.3d 80, 93–94 (Tex. 2021) (claims "may be couched as complaints about Facebook's 'design and operation' . . . , but the company's alleged lack of safety features is only relevant" because they allegedly "would have averted wrongful communication via Facebook's platforms by third parties" (cleaned up)); *Herrick v. Grindr,*

11

*LLC*, 306 F. Supp. 3d 579, 590 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019) (claim based on "fail[ure] to incorporate adequate protections against impersonating or fake accounts is just another way of asserting that Grindr is liable because it fails to police and remove impersonating content").

### b)    CSAM Claim

Plaintiffs' claim for violation of federal statutes prohibiting knowing possession or receipt of CSAM is also barred by Section 230.  The Complaint fails to demonstrate how *Apple* could possibly be liable for the third parties' possession of CSAM (or that Apple had the requisite knowledge of the CSAM depicting Plaintiffs).  But to the extent the theory is that Apple is liable because the CSAM was allegedly stored on iCloud, that theory would necessarily treat Apple as the speaker or publisher of the third-party content—just what Section 230 prohibits.  *E.g.*, *L.W.*, 675 F. Supp. 3d at 1096; *Zoom*, 525 F. Supp. 3d at 1035; *Reddit*, 2021 WL 4348731, at *3.  In addition, this claim would necessarily impose a duty on Apple to monitor and/or remove that third-party content: the only way Apple could avoid liability would be by monitoring for and removing that content.  *See Calise*, 103 F.4th at 742.  Courts have repeatedly granted Section 230 immunity to claims against websites under these CSAM statutes, as should this Court.  *See Diez v. Google, Inc.*, 831 F. App'x 723, 725 (5th Cir. 2020); *Doe v. Bates*, 2006 WL 3813758, at *20 (E.D. Tex. Dec. 27, 2006).

### c)    Negligent Misrepresentation Claim

The Complaint does not allege a single purported misrepresentation with specificity, but it appears that Plaintiffs' claim is based on the idea that Apple allegedly told consumers it would implement scanning for CSAM on iCloud and later decided not to do so (a fact it "publicly announced").  *See* Compl. ¶¶ 10, 121.  Courts have repeatedly held that Section 230 bars misrepresentation claims where, as here, they seek in substance to hold a defendant liable for "inadequate policing of third-party content."  *See Facebook*, 625 S.W.3d at 94; *see also L.W.*, 675 F. Supp. 3d at 1098 (misrepresentation and consumer protection claims barred because they were "predicated on the theory that Defendants violated various state laws by failing to adequately monitor and regulate end-users' harmful messages").  Any contrary result would render Section 230 a dead letter: nearly any claim barred by Section 230 could be refashioned as a misrepresentation claim, just as Plaintiffs have done here.  *See Barnes*, 570 F.3d at 1101–02 ("[W]hat matters is not the name of the cause of action[.]").  While the claim is "artfully pleaded" to avoid direct

reference to third-party content, *see Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 156 (E.D.N.Y. 2017), it still "implicitly require[] recourse to the [pieces of third-party content] themselves and the traditional function of a publisher to supervise content," *Herrick*, 306 F. Supp. 3d at 591.  That is because "[t]he warning proposed by [the plaintiff] is only necessary because [the defendant] (as publisher) does not . . . remove objectionable content.  Although it is indirect, liability under such a theory nevertheless depends on" decisions not to search for and remove content.  *Id.*  It is, accordingly, barred by Section 230.

### d)   Negligence Per Se Claim

Count III is framed as a negligence per se claim, but the only predicate statutes it cites are 18 U.S.C. §§ 2258A and 2258B, which generally require reporting of known apparent CSAM to NCMEC when an electronic service provider finds them.  *See* 18 U.S.C. §§ 2258A, 2258B.  Section 230 also bars this claim.  Plaintiffs allege that Apple failed to "implement effective proactive detection measures that would prevent the distribution of known hashed CSAM."  Compl. ¶ 217.  The basic premise is mistaken, because federal law imposes no such requirement. *See infra* Section IV.F.  But even setting that aside, that theory would necessarily require Apple to monitor for and remove third-party content.  And to the extent the claim asserts that Apple failed to report known pieces of CSAM, Section 230 bars that theory too, because it would still impose a duty on Apple to vet and remove specific third-party content.  Section 230 prevents liability on both bases.  *See, e.g.*, *Calise*, 103 F.4th at 744; *Barnes*, 570 F.3d at 1103; *L.W.*, 675 F. Supp. 3d at 1096; *Zoom*, 525 F. Supp. 3d at 1035; *Reddit*, 2021 WL 4348731, at *3.

### C.   Plaintiffs Have Not Plausibly Pleaded a CSAM Claim (Claim I).

Third-party bad actors allegedly created and shared CSAM depicting Plaintiffs.  Yet Plaintiffs assert that Apple violated criminal statutes, 18 U.S.C. §§ 2252 and 2252A, that prohibit knowing receipt, sale, distribution, or possession of a "visual depiction . . . of a minor engaging in sexually explicit conduct" or "an image of child pornography."  18 U.S.C. § 2252(a)(2), (4); 18 U.S.C. § 2252A(a)(2), (5).  This claim fails for two independent reasons: there is no well-pleaded allegation that Apple received, sold, sent, or possessed CSAM of Plaintiffs, and there is no allegation of Apple's knowledge of the CSAM of Plaintiffs.

To start, the Complaint fails to allege facts showing Apple possessed, sent, sold, or received CSAM of Plaintiffs.  The claim is entirely a threadbare recitation of the elements of the statute without a single

factual allegation.  *See* Compl. ¶¶ 184–89; *see also id.* ¶ 152 (similarly conclusory allegation that unspecified "Apple products" were used by third-party actors).  While the Complaint alleges that a "Forbes review . . . found that Apple's systems have been used to store and transmit" CSAM, it does not allege any basis to conclude that CSAM images of *Plaintiffs* have ever been stored on iCloud.  *Id.* ¶ 168.

Even if Plaintiffs alleged that third-party actors had stored CSAM images of them on iCloud, Plaintiffs still identify no legal basis to conclude that Apple is the possessor, sender, or recipient of CSAM uploaded and sent entirely by third parties to other third parties.  When examining claims that CSAM was distributed via file-sharing services, courts have explained that the bad actors doing the sharing are the ones liable for distribution—and that they merely *used* sharing services.  *See, e.g.*, *United States v. Stitz*, 877 F.3d 533, 538 (4th Cir. 2017) (collecting cases); *United States v. Budziak*, 697 F.3d 1105, 1109 (9th Cir. 2012) ("Budziak distributed files containing child pornography by maintaining them in a shared folder accessible to other LimeWire users.").  Plaintiffs' expansive theory would transform the internet overnight: every internet storage provider would suddenly be deemed to possess and receive information—including potentially criminal material—merely by providing generally accessible storage platforms to the public at large that may be misused by third parties, regardless of whether they had actual knowledge of any apparent CSAM.  *Cf. Twitter, Inc. v. Taamneh*, 598 U.S. 471, 501 (2023) (holding that providing generally accessible online platforms used by terrorists could not result in aiding-and-abetting liability and that "[i]f there were any doubt, the expansive scope of plaintiffs' claims would put it to rest . . . .  [P]laintiffs' claims would necessarily hold defendants liable as having aided and abetted each and every ISIS terrorist act committed anywhere in the world").  That is not and cannot be the law.

In addition, the Complaint fails to allege anything about Apple's knowledge, including—as it must—that Apple actually knew of the specific CSAM at issue in this case.  Courts have consistently held that a defendant must have knowledge of specific pieces of CSAM to be liable.  *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994) ("knowingly" as used in Section 2252 applied to elements concerning minority of performers and sexually explicit nature of material); *see also United States v. Lacy*, 119 F.3d 742, 747 (9th Cir. 1997) ("a defendant may be convicted under § 2252(a)(4)(B) only upon a showing that he knew *the matter in question* contained an unlawful visual depiction" (emphasis added)).  While Plaintiffs allege that Apple generally knew that users may misuse iCloud and store CSAM on it in

violation of its Terms, Compl. ¶ 59, such a general allegation is insufficient to state a claim.  In *M.H. On behalf of C.H. v. Omegle.com LLC*, 122 F.4th 1266 (11th Cir. 2024), for example, a user of the defendant's website created CSAM of plaintiffs' minor child.  The plaintiffs alleged the defendant website knowingly possessed child pornography in violation of Section 2252A, *id.* at 1269–70, and argued that "because child exploitation on Omegle.com is so pervasive, the company knew that people like [the bad actor] would exploit its technology to connect with minors for the purposes of recording images of child pornography," *id.* at 1272.  The Eleventh Circuit held those general allegations were insufficient because "there are no allegations that would support the conclusion that Omegle.com *knowingly* possessed or accessed John Doe's recording *knowing* it was child pornography."  *Id.*  The same is true here.

**D.     The State-Law Claims Fail to Plead Which State's Law They Invoke (Claims II–V).**

Plaintiffs' state-law claims must be dismissed because they fail to specify which state's law they are purportedly based on.  *See, e.g.*, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008) (dismissing claim because "until Plaintiffs indicate which States' laws support their claim, the Court cannot assess whether the claim has been adequately plead[ed]").  Apple and the Court therefore have no way to evaluate those claims based on any state's law, or to determine whether a choice-of-law decision should be made now or at a later juncture.  Relatedly, Plaintiffs fail to allege their state of citizenship or residence, depriving Apple of the ability to assess whether and to what extent those states' laws may apply.  *See* Compl. ¶¶ 11, 12 (alleging only that Plaintiffs reside "outside the Northern District of California").  The Court could and should dismiss these claims on that basis alone. Apple proceeds in this Motion by applying California law to show how deficient the claims are, but it reserves the right to argue that other states' laws should apply to this case and to contest Plaintiffs' choice of law.

**E.     Plaintiffs Have Not Plausibly Pleaded a Product Liability Claim (Claim II).**

Plaintiffs' product liability claim should be dismissed because iCloud is not a product within the scope of product liability law.  To state a product liability claim, Plaintiffs must allege injuries caused by a "product."  *See* Cal. Civ. Code § 1714.45(c) ("'product liability action' means any action for injury or death caused by a product"); *Jacobs v. Meta Platforms, Inc.*, 2023 WL 2655586, at *2 (Cal. Super. Ct. Mar. 10, 2023) ("A condition precedent to maintain a products liability action is that 'the object or

instrumentality claimed to be defective was in fact a product as defined or contemplated by the Restatement of Torts, legislation or case law.'" (cleaned up)).  The Third Restatement defines product as "tangible personal property distributed commercially for use or consumption."  *See* Restatement (Third) of Torts: Prod. Liab., § 19 (a)-(b) (Am. L. Inst. 1998).  And the Second Restatement identifies as "products" only "tangible items, such as tires, automobiles, and insecticides."  *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034 (9th Cir. 1991) (citing Restatement (Second) of Torts § 402A (Am. L. Inst. 1965)).  In California, "[p]roducts liability law is geared to[wards] the tangible world."  *Id.*; *see also Pierson v. Sharp Mem'l Hosp., Inc.*, 216 Cal. App. 3d 340, 345 (1989) (defining product as "a physical article which results from a manufacturing process and is ultimately delivered to a consumer").  Courts nationwide have "opposed extending products liability law to . . . intangible thoughts, ideas, and messages contained within . . . website materials" because the public policy goals underlying product liability are rooted in tangibility.  2 Owen & Davis on Prods. Liab., § 17:28 (Mary J. Davis, ed., 4th ed., May 2024 Update).

Further, "services, even when provided commercially, are not products."  *See Social Media Cases*, 2023 WL 6847378, at *15 (Cal. Super. Ct. Oct. 13, 2023) (declining to apply product liability law to social media platforms, which are "not tangible products"); Rest. 3d Torts, Prod. Liab., § 19 cmt. F ("Courts are unanimous in refusing to categorize commercially-provided services as products.").  Thus, courts reject product liability claims premised on services, including those that concern online platforms, information, or other intangibles.  *See, e.g.*, *Jacobs*, 2023 WL 2655586, at *4 (dismissing product liability claim because "Facebook is more akin to a service than a product"); *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *1, *4 (C.D. Cal. 2023) (app that allowed users to communicate with one another "is more like a service than a product, and services are not subject to the laws of strict products liability"); *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1011 (C.D. Cal. 2022) (similar); *Langley v. Guiding Hands Sch., Inc.*, 2021 WL 1212713, at *14 (E.D. Cal. Mar. 31, 2021) (dismissing "negligent product liability" claim based on a "service" rather than "a 'product'"); *Flores v. Uber Techs.*, 2022 Cal. Super. LEXIS 9648, at *8 (Cal. Super. Ct. Mar. 22, 2022) (a "plaintiff must show . . . the transaction's primary objective was to acquire ownership or use of a product, and not one where the primary objective was to obtain a service").

Here, the product liability claim is predicated on iCloud, an intangible service that "permits data

storage and synchronization across multiple devices and stores data on remote computer servers." Compl.
¶ 41. Indeed, Plaintiffs' negligence per se claim is based on alleged violations of 18 U.S.C. §§ 2258A and
2258B, which only apply to providers of "electronic communications service[s]" or "remote computing
service[s]." *See* 18 U.S.C. § 2258E. And Plaintiffs make no allegation that iCloud *itself* is tangible in any
way, unlike quintessential products like tires, automobiles, and insecticides referenced in the Second
Restatement.

In addition to excluding services, product liability law does not reach information or content,
because that would raise "significant constitutional problems under the First Amendment that ought to be
avoided." *James v. Meow Media, Inc.*, 300 F.3d 683, 695 (6th Cir. 2002). Here, the product liability
claim is premised on the alleged distribution of illicit *content*—specifically, CSAM—via iCloud. Courts
have held that images "are not sufficiently 'tangible' to constitute products." *Id.* at 701 (citing *Winter*,
938 F.2d at 1036). Because the product liability claim is based on intangible content, it must be dismissed.
*See, e.g.*, *Est. of B.H. v. Netflix, Inc.*, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022) (dismissing product
liability claims because "[t]here is no strict liability for books, movies, or other forms of media" rooted in
intangible content), *aff'd sub nom. Est. of Herndon v. Netflix, Inc.*, 2024 WL 808797 (9th Cir. Feb. 27,
2024).

To the extent that the Complaint references devices like iPhone, iPad, and MacBook, those
scattered allegations do not change the reality that the claims are targeted at iCloud, not a "design defect"
of Apple's hardware devices. *See, e.g.*, Compl. ¶¶ 60 (alleging that iCloud is the platform used for
distributing CSAM), 83 ("Apple's NeuralHash was purportedly designed to detect known CSAM on
physical Apple devices (e.g., iPhone, MacBook, iPad) at the moment the device connects to iCloud, but
not a moment sooner."), 203 (arguing that alternative designs include "[i]mplementing pro-active CSAM
detection measures and systems on iCloud"). Indeed, there is no allegation of how the design of iPhone,
iPad, and MacBook could be defective other than not scanning iCloud for CSAM. These devices are
merely the alleged manner in which bad actors may have accessed iCloud or viewed or shared CSAM,
just as any smartphone or computer can be used to view or share material online. Plaintiffs' claim is,
moreover, not based on any physical flaw of an Apple device; it is based on the design of the iCloud
service and on content provided by third-party users. *See* Rest. 3d Torts, Prod. Liab., § 19 cmt. (d)

1    ("Although a tangible medium such as a book, itself clearly a product, delivers the information, the

2    plaintiff's grievance in such cases is with the information, not with the tangible medium.").  Alleging that

3    a service relates in some way to the physical world cannot be enough to state a claim, or the service-

4    product distinction would be meaningless.  Facebook, Snap, Airbnb, Uber, and Netflix are apps that are

5    accessed on mobile devices and store data on servers, yet courts have ruled that all are services within the

6    meaning of product liability law.  *See supra* page 16.  Because iCloud is a service, not a product, the

7    product liability claims fail.[5]

8              **F.    Plaintiffs Cannot Bring a Negligence Per Se Claim (Claim III).**

9              In California, "[n]egligence per se is an evidentiary doctrine, rather than an independent cause of

10   action."  *Jones v. Awad*, 39 Cal. App. 5th 1200, 1210 (2019).  This evidentiary doctrine is "a presumption

11   of negligence [that] arises from the violation of a statute which was enacted to protect a class of persons

12   of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the

13   violation of the statute."  *Hoff v. Vacaville Unified Sch. Dist.*, 968 P.2d 522, 530 (Cal. 1998).  As a result,

14   Plaintiffs cannot bring a negligence per se *claim* under California law.[6]

15             Setting that aside, Plaintiffs have not adequately alleged a violation of the federal CSAM reporting

16   statutes (18 U.S.C. §§ 2258A and 2258B) that underlie this claim for at least three reasons.

17             To begin, these federal statutes intentionally do not include a private right of action, and Plaintiffs

18   cannot avoid Congress's choice by recasting a claim under the statutes as a negligence per se claim.  Courts

19   have repeatedly held that negligence per se only applies where there is a private right of action for the

20   underlying claim.  *See, e.g.*, *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 912 (N.D. Cal. 2024) ("To properly

21   allege a negligence per se claim, Plaintiffs must demonstrate that the statute allegedly violated allows for

22   a private cause of action." (cleaned up) (collecting cases)); *Johnson v. Honeywell Int'l Inc.*, 179 Cal. App.

23   4th 549, 556 (2009) ("The doctrine of negligence per se does not provide a private right of action for

24

25   _____

26   [5] Even if the Apple devices were the basis of the claims, Plaintiffs have failed to allege what the purported design defect in those devices is—as opposed to Apple not scanning iCloud for CSAM. That basic pleading failure would require dismissing the claim.

27   [6] This claim references "Consortium Plaintiffs" that are not elsewhere referenced in the Complaint.  Apple assumes that is an error but reserves the right to address allegations regarding consortium claims.

28

violation of a statute."). And these statutes do not create a private right of action. "Although Section 2258A establishes a duty to report under criminal law, that section does not purport to establish a private right of action." *See Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 926 (N.D. Cal. 2021), *aff'd in part, rev'd in part*, 2023 WL 3220912 (9th Cir. May 3, 2023) (Section 2258A ruling not appealed); *see also Humphries v. Newman*, 2022 WL 612657, at *5 (D.D.C. Mar. 2, 2022) (same), *aff'd*, 2022 WL 3449226 (D.C. Cir. Aug. 11, 2022); *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 843 (C.D. Cal. 2021) (same). Nor does Section 2258B (which is a *limitation* on liability, not a cause of action) provide a private right of action. *See Doe v. Twitter*, 555 F. Supp. 3d at 926. Section 2258A is explicit that "[t]he Attorney General shall enforce this section." 18 U.S.C. § 2258A(d)(1). This intentional choice would mean nothing if parties could bring the same claims under state-law negligence per se theories.

Further, this claim purports to require Apple to "implement effective proactive detection measures that would prevent the distribution of known hashed CSAM," Compl. ¶ 217, but the statutes on which the claim purports to be based are clear that federal law does *not* impose a duty to affirmatively search for or detect CSAM; instead, the duty is to report apparent CSAM *if* the provider has actual knowledge of such CSAM. *See* 18 U.S.C. § 2258A(f)(3) ("Nothing in this section shall be construed to require a provider to . . . affirmatively search, screen, or scan for facts or circumstances described in sections (a) and (b).").

Finally, the claim does not allege that Apple failed to report known CSAM when it was found. There is not a single allegation that Apple had actual knowledge of a specific piece of apparent CSAM depicting either Plaintiff and failed to report it. Indeed, the Complaint's overarching theory is that Apple does *not* scan encrypted iCloud content for known CSAM at all.[7]

**G.    Plaintiffs Have Not Plausibly Pleaded a Negligence Claim (Claim IV).**

Plaintiffs' negligence claim—which appears to essentially be a negligent product liability claim—should also be dismissed. To start, the Complaint fails to allege the necessary elements of causation and resulting damages, both because there is no indication that CSAM depicting either named Plaintiff was

---

[7] The Complaint includes a single, unexplained, allegation that Apple did not adequately minimize the number of employees with access to CSAM. Compl. ¶ 221. There are no factual allegations to support that conclusory assertion—and Plaintiffs' entire theory is that Apple *does not* search for or review CSAM.

1  stored on or disseminated using iCloud, *supra* Sections IV.A, IV.C, and because third-party bad actors

2  proximately caused any alleged harm to Plaintiffs, *infra* Section IV.I.

3      Setting that aside, the Complaint does not allege any recognized legal duty, a required element of

4  any negligence claim.  *See Apex Directional Drilling, LLC v. SHN Consulting Eng'rs & Geologists, Inc.*,

5  119 F. Supp. 3d 1117, 1122 (N.D. Cal. 2015) ("[t]he threshold element of a cause of action for negligence

6  is the existence of a duty").  In *Dyroff*, for example, the Ninth Circuit refused to find that a website owed

7  its users a duty of care, observing that "[n]o website could function if a duty of care was created when a

8  website facilitates communication, in a content-neutral fashion, of its users' content."  934 F.3d at 1101;

9  *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 851 (W.D. Tex. 2007) (defendant website did not owe duty

10 of care to adopt safety measures), *aff'd*, 528 F.3d 413 (5th Cir. 2008).

11     Apple owes no legal duty to prevent harm caused by the unlawful acts of third parties.  *See Durden*

12 *v. United States*, 736 F.3d 296, 304 (4th Cir. 2013) (finding "there is neither a duty to control the actions

13 of a third party, nor to protect another from a third party"); *Gavra v. Google Inc.*, 2013 WL 3788241, at

14 *3 (N.D. Cal. July 17, 2013) ("Google has assumed no affirmative duty to protect Plaintiffs from

15 extortion.").  In fact, "the defendant owes no legal duty to the plaintiff" if "the defendant has neither

16 performed an act that increases the risk of injury to the plaintiff nor sits in a relation to the parties that

17 creates an affirmative duty to protect the plaintiff from harm."  *Brown v. USA Taekwondo*, 483 P.3d 159,

18 166 (Cal. 2021).  And the Ninth Circuit has explained that a defendant's inaction or "nonfeasance" does

19 not create a duty of care where none existed prior.  *See Dyroff*, 934 F.3d at 1100.  Nor does the tort law

20 principle of a "special relationship" create a general duty of care between Apple and third-party victims

21 of child sexual abuse.  Courts have refused to apply the "special relationship" principle to claims by users

22 of online platforms.  *See id.* at 1101 ("[N]o special relationship [exists] between Facebook and its users.");

23 *see also, e.g.*, *James*, 300 F.3d at 694 (websites, video game manufacturers, and movie producers had no

24 "special relationship" with students killed by classmate).  Plaintiffs allege *no* relationship between

25 themselves and Apple.  Plaintiffs' apparent theory that Apple owed them a duty of care to prevent CSAM

26 distribution by third parties via iCloud, Compl. ¶¶ 234–35, is insufficient as a matter of law.

27     **H.    Plaintiffs Have Not Plausibly Alleged Any Misrepresentation (Claim V).**

28     Under California law, a negligent misrepresentation claim requires "(1) the misrepresentation of a

20

past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*, 171 Cal. App. 4th 35, 50 (2009) (cleaned up). Plaintiffs' negligent misrepresentation claim fails at every turn: it does not allege (i) any misrepresentation at all—and certainly not one that can form the basis of a viable claim; (ii) that either named Plaintiff actually or justifiably relied on Apple's statements; and (iii) that any misrepresentation caused the damages Plaintiffs assert, which allegedly stem from the dissemination of CSAM depicting them, not anything Apple said.

While courts in this Circuit have divided over whether negligent misrepresentation claims must be pleaded with particularity under Rule 9(b), the most recent and best reasoned of these cases agree that they must be because they "sound in fraud." *See, e.g.*, *Hannan v. Bos. Sci. Corp.*, 2020 WL 2128841, at *11 (N.D. Cal. May 5, 2020); *Zetz v. Bos. Sci. Corp.*, 398 F. Supp. 3d 700, 713 & n.3 (E.D. Cal. 2019) (explicitly disagreeing with prior cases taking the opposite approach). And that approach is consonant with the "consensus" among California courts that at least "the causal elements [of negligent misrepresentation], particularly the allegations of reliance, must be specifically pleaded," *Nat'l Union*, 171 Cal. App. 4th at 50, and their definitive holding that California negligent misrepresentation claims "sound in fraud," *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1166 (2016).

## 1. The Complaint Fails to Identify Any Actionable Misrepresentation.

Most fundamentally, the four-paragraph misrepresentation claim fails to allege a single misrepresentation. *See* Compl. ¶¶ 238–41. The only other mention of an alleged misrepresentation in the Complaint is that "Apple misled Plaintiffs and the public about the NeuralHash implementation." Compl. ¶ 121. That is inadequate under Rule 8 and also deficient under Rule 9(b), because it entirely fails to identify what Apple allegedly misrepresented. *See Kearns*, 567 F.3d at 1124. As a result, it is not possible for Apple to defend against the allegations or for the Court to evaluate them.

To the extent the theory is that Apple "announced" it was considering developing NeuralHash and eventually announced it would not move forward with it, there is no alleged misrepresentation identified in the Complaint regarding those announcements. To the contrary, the Complaint alleges that Apple was upfront about the progress of NeuralHash: within roughly one month of the initial announcement, Apple

also "announced" it was delaying implementation of NeuralHash, Compl. ¶ 118, and then later "publicly announced" that it would not be moving forward with scanning for CSAM, *id.* ¶¶ 10, 122.  It cannot be that a company "misleads" consumers when it publicly announces an initiative is forthcoming, publicly and promptly announces the delay of the initiative, and then publicly announces it will not implement that initiative after further development and consideration.  *Cf. Dinan v. Sandisk LLC*, 2019 WL 2327923, at *6 (N.D. Cal. May 31, 2019) ("the Ninth Circuit has made clear that context and consumers' 'common sense' matter to the [reasonable consumer inquiry under consumer protection law] as well").  A negligent misrepresentation claim requires a misrepresentation of a "past or existing" fact, *Nat'l Union*, 171 Cal. App. 4th at 50—not that a company planned to take an initiative in the future and then later openly and transparently announced it was proceeding in a different direction.

### 2.    The Complaint Fails to Plead that Either Named Plaintiff Actually or Justifiably Relied on Any Statements.

Plaintiffs also fail to plead that they relied on any of Apple's statements, let alone did so justifiably and with the particularity required by Rule 9(b).  The Complaint fails to allege that either named Plaintiff read or heard Apple's announcement of NeuralHash.  It fails to allege where and under what circumstances they did so.  It fails to allege that they relied on those statements in any way.  It fails to allege why that reliance was justifiable after Apple "public[ly] announced," Compl. ¶ 10, it was delaying development of NeuralHash, and ultimately would not move forward with scanning iCloud for CSAM.  All of this is fatal to the claim.

Although there is a conclusory allegation that Plaintiffs "relied on" unspecified alleged misrepresentations "when making their purchases," *id.* ¶ 241, that allegation is insufficient as a matter of general pleading principles, and falls far short of Rule 9(b).  *See, e.g.*, *Johnson v. Glock, Inc.*, 2021 WL 428635, at *4 (N.D. Cal. Feb. 8, 2021) (dismissing claim where there was "no pleading that [plaintiff] ever saw, let alone relied on, the website [containing the alleged misrepresentations] prior to purchasing his gun" (cleaned up)); *Zetz*, 398 F. Supp. 3d at 714 ("For the 'when' and the 'where,' the complaint alleges, according to Plaintiffs, that the misrepresentations and concealments occurred sometime 'before' Plaintiff was implanted with the Product (which was November 12, 2008) and occurred where Plaintiffs lived, which is somewhere in California.  Such allegations fail to provide the requisite particularity.").

Indeed, these boilerplate allegations are particularly puzzling in this case because the core of the Complaint is that Plaintiffs were harmed by the spread of CSAM depicting them that was initially created in the early 2000s, long before iCloud is alleged to have launched.  Nor does the Complaint offer any specificity about what "purchases" Plaintiffs made from Apple, when those purchases were made, or how the purchases were in any way related to any alleged misrepresentation.

### 3.    The Complaint Fails to Plead Causation or Resulting Damages.

In addition to the fundamental issue that third parties, not Apple, caused Plaintiffs' alleged damages as a matter of law, *see infra* Section IV.I, Plaintiffs have failed to adequately plead that any misrepresentation proximately caused any damages on an independent ground.  *See Osborn v. Irwin Mem'l Blood Bank*, 5 Cal. App. 4th 234, 251 (1992).  The alleged harms to Plaintiffs in this case were "caused" in the early 2000s by "collection and trading of CSAM depicting Amy and Jessica" by their relatives and by other bad actors spreading that CSAM.  Compl. ¶ 149.  That alleged harm does not in any sense stem from Apple's 2021 statements regarding developing NeuralHash.  And to the extent the alleged harm comes from purchases of unspecified Apple devices, there are no well-pleaded allegations about those purchases, let alone those sufficient to demonstrate that Plaintiffs' reliance caused them damages.

### I.    Plaintiffs Cannot Establish that Apple Proximately Caused Their Injuries (Claims II–V).

Plaintiffs' state-law claims all fail as a matter of law because they do not adequately allege proximate causation, a necessary element of each cause of action.  *See Camacho v. JLG Indus. Inc.*, 93 Cal. App. 5th 809, 817 (2023) (product liability); *Peredia v. HR Mobile Servs., Inc.*, 25 Cal. App. 5th 680, 687 (2018) (negligence); *Osborn*, 5 Cal. App. 4th at 251 (negligent misrepresentation).

Criminal acts of third parties are a new and independent cause that breaks the chain of causation. Proximate cause is a cause that creates an "unbroken sequence, without an intervening sufficient independent cause" for the injury.  *People v. Jones*, 105 Cal. App. 5th 83, 91 (2024) (cleaned up); *see also, e.g.*, *Novak v. Cont'l Tire N. Am.*, 22 Cal. App. 5th 189, 197 (2018) ("Proximate cause analysis is also concerned with intervening forces operating independent of defendant's conduct," such as the wrongful acts of a third party, there a motorist who caused an accident.).  The criminal acts of a third party are generally independent, intervening causes that break the causal chain.  *See Terpin v. AT&T Mobility,*

*LLC*, 399 F. Supp. 3d 1035, 1043 (C.D. Cal. 2019) ("In California, a criminal act will be deemed a superseding cause unless it involves a particular and foreseeable hazard inflicted upon a member of a foreseeable class." (cleaned up)); *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 154 (2018) (although "manufacture of the iPhone 6 Plus" was a "necessary antecedent" of the plaintiffs' injuries, "those injuries were not a result of Apple's conduct" because a third party "caused [plaintiffs'] injuries when he crashed into their car" (cleaned up)). Courts apply this principle where victims connect with bad actors via internet services. *See, e.g.*, *Fields II*, 881 F.3d at 750 (website was not proximate cause of harm caused by ISIS merely by providing "accounts and messaging services" to it); *see also, e.g.*, *Crosby v. Twitter, Inc.*, 921 F.3d 617, 625 (6th Cir. 2019) (same).

Here, Plaintiffs' adult relatives wrongfully exploited them when they were children by creating CSAM of them, and various unidentified third-party bad actors allegedly shared the CSAM depicting Plaintiffs, including, necessarily, on platforms other than iCloud. Plaintiffs claim that the "collection and trading of CSAM depicting Amy and Jessica has caused them" harm, Compl. ¶ 150, and that they are "re-victimized *by criminal individuals* who regularly possess, trade, and/or distribute the CSAM depicting them," *id.* ¶ 151 (emphasis added). The only alleged link to Apple is that these third-party criminals spread CSAM via the internet, including allegedly using iCloud. These are paradigmatic independent criminal acts that, as a matter of law, break the causal chain. *Cf., e.g.*, *Fields II*, 881 F.3d at 750.

## V.   CONCLUSION

For the reasons stated, Apple respectfully requests that the Complaint be dismissed with prejudice.

DATED:  February 6, 2025

Respectfully submitted,

By:   */s/ Isaac D. Chaput*

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Isaac D. Chaput (Bar No. 326923)
Amy S. Heath (Bar No. 312516)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: ichaput@cov.com
Email: aheath@cov.com

David N. Sneed (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662 5027
Facsimile: (202) 778-5027
Email: dsneed@cov.com

*Attorneys for Defendant Apple Inc.*