United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMY, et al.,

Plaintiffs,

v.

APPLE INC.,

Defendant.

Case No. 24-cv-08832-NW

**ORDER GRANTING MOTION TO DISMISS WITH PARTIAL LEAVE TO AMEND; GRANTING MOTIONS TO SEAL**

Re: ECF No. 64, 65, 66, 68

This is a putative class action brought against Apple, Inc. by individuals depicted in Child Sexual Abuse Material ("CSAM") shared using Apple's technology and hosted on Apple's servers. Named Plaintiffs Amy and Jessica (using pseudonyms) allege violations under 18 U.S.C. §§ 2252, 2252A, and 2255 as well as violations of products liability and negligence state laws.[1] Apple timely moved to dismiss Plaintiffs' first amended complaint ("FAC"). ECF Nos. 56, 65.[2]

The Court GRANTS the motion to dismiss with partial leave to amend.

**A. Apple Devices and iCloud Products**

Apple is one of the most well-known companies in the world. Among other things, the company manufactures and sells a range of electronic devices, including phones, tablets, and computers. iCloud is Apple's data storage service; it is built into each Apple device and automatically updates, syncs, and backs up user data every day. FAC ¶ 33-34. As alleged, "iCloud is managed by physical data centers which house servers owned and controlled by Apple

---

[1] As discussed *supra,* the Court concurrently grants three applications to seal the portions of the parties' briefing that identify Plaintiffs' states of residence. In the public version of this Order, the Court redacts that information to maintain Plaintiffs' anonymity.

[2] To the extent possible, citations are made to public versions of documents filed with the Court.

United States District Court
Northern District of California

or operated through third party servers which Apple commands and controls." *Id.* ¶ 37. "These servers are physical devices on which Plaintiffs' CSAM resides." *Id.*

Like many similar products on the market, iCloud data is secured using encryption. *Id.* ¶¶ 57-64. Users have the choice between two levels of data protection, standard or advanced. *Id.* ¶ 60. With Standard Data Protection, iCloud data is encrypted but the encryption keys are secured in Apple's data centers, allowing Apple to decrypt users' data. *Id.* ¶¶ 61. Advanced Data Protection provides end-to-end encryption, meaning most encryption keys are stored only on users' devices, effectively locking Apple out of the stored data. *Id.* ¶ 62.

Plaintiffs allege that Apple has actual knowledge that its products and services are defectively designed when it comes to CSAM. *Id.* ¶ 70. In support of this contention, Plaintiffs quote a text message sent in 2020 by Apple's then anti-fraud chief Eric Friedman. *Id.* ¶¶ 71-74. In the 2020 text message, Friedman states that other tech companies focus on "trust and safety" but "suck" when it comes to privacy, and the priorities at Apple "are the inverse [w]hich is why [Apple] [is] the greatest platform for distributing child porn, etc." *Id.* When asked in the text thread if there is "a lot of [CSAM] in our ecosystem," Friedman responds, "Yes," and admits that Apple has "chosen to not know [about CSAM] in enough places where we really cannot say." *Id.*

**B. PhotoDNA and NeuralHash**

According to Plaintiffs, Apple's failure to include CSAM detection tools within its products is contrary to industry standards and accepted best practices. In 2008, Microsoft developed PhotoDNA, an image-comparison technology that gave it the ability to detect, report, and remove known CSAM. PhotoDNA can identify when a user uploads or stores an image that closely resembles known and identified CSAM. Since its development, Apple's and Microsoft's peer companies including Google and Dropbox have implemented PhotoDNA or something similar into their products. Use of the tool is proactive, meaning the companies affirmatively use it to detect, report, and remove CSAM from company servers. *Id.* ¶¶ 77-83.

Apple does not use PhotoDNA in any of its devices. *Id.* ¶ 82. Instead, in August of 2021, Apple announced that it would launch its own proprietary CSAM detection tool known as NeuralHash. *Id.* ¶ 87. Apple worked with the National Center for Missing and Exploited Children

(NCMEC) to develop, implement, and train NeuralHash technologies. NeuralHash was trained using raw images of CSAM available only through the NCMEC, which includes images that depict Amy, Jessica, and/or class members. *Id.* ¶ 92. Apple touted two key features that supposedly differentiated its service from PhotoDNA: NeuralHash would be able to (i) detect known CSAM even if the images were altered, and (ii) scan for CSAM on a user's device without upload to the cloud. *Id.* ¶ 87.

Apple announced their new technology in early August 2021. *See generally id.* ¶¶ 86-124. When a reporter asked Apple why it had waited so long to implement proactive CSAM detection, Apple's head of privacy explained that the company felt it finally had the capability to develop "technology that can balance strong child safety and user privacy." FAC ¶ 119. Child safety advocates lauded Apple's announcement and led Plaintiffs to believe that the company "was finally acting on its self-proclaimed and industry standard duty to provide safe products and report known detectable CSAM." FAC ¶ 131.

Notwithstanding the supposed cutting-edge technology, experts quickly discovered that NeuralHash was significantly less precise and had a higher false-positive rate than PhotoDNA. *Id.* ¶¶ 133-125. At the same time, privacy advocates loudly disparaged Apple for rolling out technology with potential surveillance capabilities. *Id.* ¶¶ 183-184. On September 3, 2021, less than a month after Apple announced NeuralHash, the company announced that it was going to delay rollout without providing any additional timeline. *Id.* ¶ 136. Apple quietly cancelled NeuralHash in December 2022. *Id.* ¶ 141. Additionally, that same month, Apple launched the option for end-to-end encryption for iCloud data, making it "nearly impossible for either Apple or law enforcement to detect known CSAM stored on iCloud." *Id.* ¶ 146.

**C. Plaintiffs**

Plaintiffs Amy and Jessica are victims of child sexual abuse. In the early 2000s, Amy and Jessica were repeatedly raped and exploited by male relatives for the express purpose of producing CSAM to share on the internet. *Id.* ¶ 150-163. CSAM featuring Amy or Jessica has long been known to the NCMEC and was likely used to train Apple's now defunct NeuralHash program.

Both Amy and Jessica receive notices via the United States Department of Justice Victim

United States District Court
Northern District of California

Notification System (VNS), which alert them when they are a potential victim in federal and state law enforcement agency investigations. CSAM depicting Amy and Jessica continues to be shared and stored by child predators. In the last decade alone, law enforcement has identified more than six dozen criminal defendants who used Apple products to store CSAM; at least a dozen of those defendants possessed, traded, and distributed CSAM that depicts Amy or Jessica. *See id.* ¶ 169.

Plaintiffs allege that Apple's failure to implement NeuralHash or any other child safety features capable of detecting known CSAM on its products caused Plaintiffs to be injured because CSAM depicting them was received, possessed, and distributed using Apple products. Apple could have designed its products to protect and avoid injury to child victims of known CSAM, and Apple knew or should have known that CSAM depicting Amy and Jessica would continue to spread through Apple's products without Apple implementing proactive detection technologies. Despite this knowledge, Apple avoided design changes that would have increased safety and reduced the injury to CSAM victims. Plaintiffs allege that Apple's failure to implement any known CSAM detection is a design defect because Apple can safely implement readily available features to prevent the spread of known CSAM but has continuously failed to do so.

### D. Class Allegations

As defined, the putative class is comprised of "[a]ll CSAM victims depicted in any CSAM hashes present in the NCMEC Child Sexual Abuse Material Hash List, which was available on Apple's products, including iCloud, from August 5, 2021, to the date of the class notice." *Id.* ¶ 218. Plaintiffs allege that the exact size of the class is unknown, but that it is likely in the thousands. *Id.* ¶ 220.

## II. LEGAL STANDARD

### A. Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(6), a complaint or cause of action can be dismissed where the pleading fails to state a claim upon which relief can be granted. To survive a motion to dismiss on those grounds, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court must accept the well-pleaded allegations of fact in the complaint as true, and must construe those facts—and all inferences from those facts—in the light most favorable to the Plaintiff. *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). But the Court need not accept as true "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir.1994); *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

**B. Section 230**

Apple argues that Section 230 of the Communications Decency Act ("CDA") bars Plaintiffs' suit in its entirety because all of Plaintiffs' claims rely on Apple's role as a publisher of third-party data. Mot. at 5. Section 230(c)(1) states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The Ninth Circuit has interpreted this provision to protect from liability: "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1100-01 (9th Cir. 2009), *as amended* (Sept. 28, 2009). Acting as a publisher includes "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Id*. at 1102. However, "it is not enough that a claim, including its underlying facts, stems from third-party content for Section 230 immunity to apply." *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 742 (9th Cir. 2024). Rather, "[t]he proper analysis is to examine closely the duty underlying each cause of action and decide if it 'derives from the defendant's status or conduct as a publisher or speaker.'" *Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1179 (9th Cir. 2024) (quoting *Barnes*, 570 F.3d at 1107). As the Ninth Circuit in *Bride* explained:

> First, we examine the "right from which the duty springs." Does it stem from the platform's status as a publisher (in which case it is barred by § 230)? Or does it spring from some other obligation, such

> as a promise or contract (which, under *Barnes*, is distinct from publication and not barred by § 230)? Second, we ask what "this duty requir[es] the defendant to do." If it *requires* that [defendant] moderate content to fulfill its duty, then § 230 immunity attaches.

*Id.* at 1177 (internal citations omitted).

There is no dispute that Apple is a provider of interactive computer services. Mot. at 5-6. The question is whether Plaintiffs' claims seek to treat Apple as a *publisher* or *speaker* of information provided by others.

The legislative intent behind the CDA and its various amendments shows Congress' shifting priorities over the last 25 years, but the protection of children has always been its principal aim. "When it was introduced, the primary purpose of the CDA was to protect children from sexually explicit internet content." *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016) (citing legislative history). "Section 230, enacted through an amendment to the CDA, had a different objective: '[T]o preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation.'" *Id.* (quoting § 230(b)(2)). In 2018, however, Congress enacted the Fight Online Sex Trafficking Act ("FOSTA") because "section 230 . . . was never intended to provide legal protection to . . . websites that facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims." FOSTA, Pub. L. No. 115-164 § 2(1), 132 Stat. 1253 (2018).

At the motion to dismiss stage, the Court notes that "Section 230(c)(1) is an affirmative defense." *Calise*, 103 F.4th at 738. Apple thus bears the "burden of showing that § 230(c)(1) applies." *Id.* Accordingly, the Court may not dismiss a complaint where plaintiffs "plead facts demonstrating a potential factual dispute that could affect whether the defense applies." *Rabin v. Google LLC*, 725 F. Supp. 3d 1028, 1031 (N.D. Cal. 2024). "Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 (9th Cir. 2018).

## III. DISCUSSION

As an initial matter, Plaintiffs fail to confront or even discuss this Court's earlier ruling in *Doe v. Apple*, a case brought against this same Defendant alleging similar claims on similar facts.

No. 24-CV-05107-NW, 2025 WL 1266928 (N.D. Cal. May 1, 2025). Plaintiffs' first amended complaint was filed two months after *Doe v. Apple* was decided, and Defendant heavily cites the case in its motion to dismiss. *See* Mot. at 2 ("Plaintiffs' claims also are all inadequately pleaded, including for the same reasons that led this Court to dismiss similar claims in *Doe v. Apple.*"). Nevertheless, Plaintiffs rely on the same arguments and analyses that the Court rejected previously. To the extent Plaintiffs choose to amend their complaint where the Court grants leave to do so, Plaintiffs must ensure that their claims and subsequent arguments materially differ from those that the Court now rejects for a second time.

**A. Count I: 18 U.S.C. §§ 2252, 2252A, and 2255**

Congress enacted 18 U.S.C. § 2255, known as "Masha's Law," in 2005 to address the "lack [of] effective remedies under Federal law" for victims of child pornography. *Stephens v. Clash*, 796 F.3d 281, 285 (3d Cir. 2015) (internal quotation omitted). Masha's Law provides a civil remedy for "[a]ny person who, while a minor, was a victim of a violation of" various sections of Title 18 prohibiting sexual exploitation of children, including §§ 2252 and 2252A. *M.H. On behalf of C.H. v. Omegle.com LLC*, 122 F.4th 1266, 1271 (11th Cir. 2024). It is a violation of Masha's Law to: "knowingly receive[], or distribute[], any visual depiction using any means . . . including by computer . . . if— . . . [the] visual depiction involves the use of a minor engaging in sexually explicit conduct; and . . . such visual depiction is of such conduct"; it is also a violation to "knowingly possess[] . . . any . . . material that contains an image of child pornography that has been . . . transported using any means or facility of interstate or foreign commerce . . . including by computer." 18 U.S.C. § 2252(a)(2), (4); 18 U.S.C. § 2252A(a)(2), (5).

To succeed on this claim, Plaintiffs must allege that Apple knowingly received or distributed CSAM. Apple argues that Plaintiffs must plead that Apple had actual knowledge of the CSAM at issue in this case to state a claim under §§ 2252 and 2252A. Mot. at 13. Plaintiffs respond that the knowledge element of §§ 2252 and 2252A can be demonstrated through deliberate indifference, citing *M.H.*, 122 F.4th at 1277. Plaintiffs' argument is flawed for several reasons. First, Plaintiffs citation is to Judge Lagoa's partial dissent to the majority opinion in that case, giving it no precedential value (and rendering the citation itself misleading). Regardless,

decisions in the Eleventh Circuit have no binding power on courts in the Ninth Circuit, where this Court sits. Plaintiffs fail to cite to ***any other case***, Ninth Circuit or elsewhere, in support of its contention that deliberate indifference is sufficient. Opp'n at 6-7. And the Ninth Circuit cases that speak to these issues firmly close the door on Plaintiffs' interpretation of the knowledge element. In *Does 1-6 v. Reddit, Inc*, 51 F.4th 1137, 1145-46 (9th Cir. 2022), a case not unlike *M.H.*, the Ninth Circuit held that willful ignorance of a provider, without more, cannot sustain a violation of a sex trafficking statute such as §§ 2252 or 2252A. *Id.* ("Taken as true, these allegations suggest only that Reddit 'turned a blind eye' to the unlawful content posted on its platform, not that it actively participated in sex trafficking.").

What's more, even if Plaintiffs were able to allege actual knowledge, their claims are likely barred by Section 230. The Ninth Circuit has already decided that Section 230 immunizes publishers where the underlying claims are civil rather than criminal. *Doe #1 v. Twitter, Inc.*, No. 22-15103, 2023 WL 3220912, at *2 (9th Cir. May 3, 2023) ("[A]lthough section 230(e)(1) exempts from immunity the enforcement of criminal laws under Chapter 110 of Title 18 (which contains sections 2252A and 2255), our court has consistently held that § 230(e)(1)'s limitation on § 230 immunity extends only to criminal prosecutions, and *not to civil actions based on criminal statutes*.") (internal quotations omitted) (emphasis added); *see also In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 777 F. Supp. 3d 1016, 1033 (N.D. Cal. 2025) (granting dismissal on § 230 ground where plaintiff alleged "platforms had actual or constructive knowledge of instances of CSAM on the platforms.").

Accordingly, Apple's motion to dismiss Claim I is GRANTED WITH PREJUDICE.

**B. Counts II, III, and IV: Products Liability, Negligence Per Se, and Negligence**

Plaintiffs remaining claims are rooted in common law torts. Consistent with this Court's decision in *Doe v. Apple*, the Court dismisses these claims for failing to specify the applicable state law for their claims. *Doe v. Apple Inc.*, No. 24-CV-05107-NW, 2025 WL 1266928, at *10 (N.D. Cal. May 1, 2025). As noted there, "[t]hough there are some cases which suggest the issue should or could be deferred at the pleading stage, 'courts in this district have held that, due to variances among state laws, failure to allege which state law governs a common law claim is

United States District Court
Northern District of California

grounds for dismissal.'" *Id.* (quoting *Sidhu v. Bayer Healthcare Pharms. Inc.*, No. 22-CV-01603-BLF, 2022 WL 17170159, at *3 (N.D. Cal. Nov. 22, 2022)). Pleading each specific state law promotes judicial efficiency and distills the merits of the case for all parties.[3]

The motion to dismiss the remaining common law claims for failure to identify which state law applies is GRANTED WITH LEAVE TO AMEND.

## IV. MOTIONS TO SEAL

Also pending before the Court are three administrative motions to seal the portions of the motion to dismiss papers that indicate Plaintiffs' residences and references to those states' laws. ECF Nos. 64, 66, 68. The Court granted the parties stipulation to seal that information in the FAC on May 7, 2025. *See* ECF Nos. 55, 60. For the same reasons stated in the Court's previous order, those motions are GRANTED to maintain the lead Plaintiffs' anonymity.

## V. CONCLUSION

For the reasons stated, Apple's motion to dismiss is GRANTED with partial leave to amend. Claim I is DISMISSED WITH PREJUDICE. Claims II-IV are DISMISSED WITH LEAVE TO AMEND. Plaintiffs shall file any amended complaint within 21 days of this order.

**IT IS SO ORDERED.**

Dated: October 15, 2025

Noël Wise
United States District Judge

[3] Plaintiffs appear to implicitly concede that neither California nor [REDACTED] recognize negligence per se as a standalone action. *See* Opp'n at 22 (exclusively discussing [REDACTED] law in response to Apple's attacks on the negligence per se claim); *Jones v. Awad*, 39 Cal. App. 5th 1200, 1210 (2019) (In California, "[n]egligence per se is an evidentiary doctrine, rather than an independent cause of action."); [REDACTED] (cleaned up) ("[U]nder [REDACTED] law, negligence per se is not a separate cause of action" but rather "a theory of liability that supports a negligence claim."). Plaintiffs' failure to address the negligence per se claim is it relates to California and [REDACTED] constitutes waiver of the claim as to those states. *Allen v. Dollar Tree Stores, Inc.*, 475 Fed.Appx. 159, 159 (9th Cir. 2012) (district court properly dismissed claims where plaintiff's "opposition to the motion to dismiss failed to respond to [the defendant's] argument").