Ashley M. Simonsen (Bar No. 275203)
Alexander L. Schultz (Bar No. 340212)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com
Email: aschultz@cov.com

Isaac D. Chaput (Bar No. 326923)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: ichaput@cov.com

David N. Sneed (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662 5027
Facsimile: (202) 778-5027
Email: dsneed@cov.com

*Attorneys for Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| "AMY" and "JESSICA," on behalf of themselves and others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>APPLE INC.<br><br>      Defendant. | Civil Case No.: 5:24-cv-08832-NW<br><br>**DEFENDANT APPLE INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date: April 22, 2026<br>Time: 9:00 AM<br>Place: Courtroom 3<br>Judge: The Honorable Noël Wise |

# TABLE OF CONTENTS

I.      INTRODUCTION AND STATEMENT OF THE ISSUES.................................................1

II.     BACKGROUND ...........................................................................................................3

        A.      Plaintiffs' Second Amended Complaint ...........................................................3

        B.      iCloud, iMessage, Apple Devices, and Safety Features ....................................4

        C.      Scanning iCloud for CSAM ..............................................................................5

        D.      Plaintiffs' Images Are Disseminated by Bad Actors Across the Internet............5

III.    LEGAL STANDARD....................................................................................................6

IV.     ARGUMENT .................................................................................................................6

        A.      Section 230 of the Communications Decency Act Bars All of Plaintiffs' Claims. ...........6

                1.      Plaintiffs' Failure-to-Monitor Theory Is Barred By Section 230. ...........8

                2.      Plaintiffs' Undertaking Theory Is Likewise Barred by Section 230.....................12

        B.      The Previously Dismissed State-Law Claims for Strict Liability and Negligence Again Fail to Plead Which State's Law They Invoke (Claims I and III). ...................................14

        C.      Plaintiffs Have Not Plausibly Pleaded a Product Liability Claim (Claim I). ....................14

        D.      Plaintiffs Cannot Bring a Negligence Per Se Claim (Claim II). .........................................16

                1.      Plaintiffs' Improper Shotgun Pleading Violates Rule 8. ...................17

                2.      ███████ Recognizes Negligence Per Se Claims Only in Limited Circumstances that Plaintiffs Have Not Alleged.........................................................17

                3.      Plaintiffs Fail to Plead a Violation of a Predicate Federal Law............................18

                4.      Plaintiffs Fail to Plead a Violation of a Predicate State Law................................19

        E.      Plaintiffs Have Not Plausibly Pleaded Any Negligence-Based Claims (Claims III–V, VII).......................................................................................................................20

        F.      Plaintiffs Have Not Plausibly Pleaded a Negligent Undertaking Claim (Claims IV–V). ...21

        G.      Plaintiffs Have Not Plausibly Pleaded an Intentional Infliction of Emotional Distress Claim (Claim VI). ...................................................................................................23

H.    Plaintiffs Have Not Plausibly Pleaded a Negligent Infliction of Emotional Distress Claim (Claim VII)..................................................................................................23

I.    Plaintiffs Cannot Establish that Apple Proximately Caused Their Injuries (Claims I–VII). .................................................................................................................................24

V.    CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Hilton Worldwide Holdings Inc.,*
   484 F. Supp. 3d 921 (D. Or. 2020) ............................................................. 21, 22

*Al-Ahmed v. Twitter, Inc.,*
   603 F. Supp. 3d 857 (N.D. Cal. 2022) ............................................................. 14

   ███████████████████████████ ............................................................. 18

*Apex Directional Drilling v. SHN Consulting Eng'rs & Geologists, Inc.,*
   119 F. Supp. 3d 1117 (N.D. Cal. 2015) ............................................................. 25

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................. 6, 21

*Atkinson v. United States,*
   2016 WL 9455261 (S.D. Cal., Jan. 4, 2016)............................................................. 29

*Bank of Am. Corp. v. City of Miami, Fla.,*
   581 U.S. 189 (2017)............................................................. 31

*Barnes v. Yahoo!, Inc.,*
   570 F.3d 1096 (9th Cir. 2009) ............................................................. *passim*

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)............................................................. 6

*Brown v. USA Taekwondo,*
   483 P.3d 159 (Cal. 2021) ............................................................. 27

*Calise v. Meta Platforms, Inc.,*
   103 F.4th 732 (9th Cir. 2024) ............................................................. *passim*

*Carafano v. Metrosplash.com, Inc.,*
   339 F.3d 1119  (9th Cir. 2003) ............................................................. 8

*Christensen v. Superior Ct.,*
   54 Cal. 3d 868 (1991) ............................................................. 29

*Paz v. State of Cal.,*
   22 Cal. 4th 553 (2000) ............................................................. 28

   ███████████████████████████ ............................................................. 31

    

*Coyoy v. City of Eloy*,
  859 Fed. App'x 96 (9th Cir. 2021) ................................................................. 27

*Craft v. Musk*,
  2023 WL 2918739 (N.D. Cal. Apr. 12, 2023) ................................................. 16

*Crosby v. Twitter, Inc.*,
  921 F.3d 617 (6th Cir. 2019) ......................................................................... 31

*Doe v. Twitter*,
  555 F. Supp. 3d at 926. ................................................................................. 23

*Doe (K.B.) v. Backpage.com, LLC*,
  768 F.Supp.3d 1057 (N.D. Cal. 2025) ..................................................... 13, 16

*Doe 1 v. Twitter*,
  148 F.4th 635 (9th Cir. 2025) ................................................................ *passim*

*Doe v. Apple*,
  2025 WL 1266928 (N.D. Cal. May 1, 2025) ......................................... 3, 13, 17

*Doe v. Grindr Inc.*,
  128 F.4th 1148, 1156 (9th Cir. 2025) .................................................... *passim*

*Doe v. Mindgeek USA Inc.*,
  558 F. Supp. 3d 828 (C.D. Cal. 2021) ........................................................... 23

*Doe v. MySpace, Inc.*,
  474 F. Supp. 2d 843 (W.D. Tex. 2007)........................................................... 26

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) ......................................................................... 11

*Doe v. Reddit, Inc.*,
  2021 WL 4348731 (C.D. Cal. July 12, 2021)................................................. 12

*Doe v. Snap, Inc.*,
  2022 WL 2528615 (S.D. Tex. July 7, 2022)................................................... 13

*Doe v. Twitter, Inc.*,
  555 F. Supp. 3d 889 (N.D. Cal. 2021) ........................................................... 23

*Durden v. United States*,
  736 F.3d 296 (4th Cir. 2013) ......................................................................... 26

*Dyroff v. Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019) ................................................................ *passim*

iv

████████████████████████████ ................................................. 18, 19

████████████████████████████ ................................................. 26

*Est. of B.H. v. Netflix, Inc.*,
  2022 WL 551701 (N.D. Cal. Jan. 12, 2022) ............................................. 20

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) .......................................................... *passim*

*Fields v. Twitter*,
  217 F. Supp. 3d 1116 (N.D. Cal. 2016) .................................................. 10

*Fields v. Twitter*,
  881 F.3d 739 (9th Cir. 2018) ("*Fields II*") ......................................... 31, 32, 33

*Flores v. Wells Fargo Bank, N.A.*,
  2012 WL 2427227 (N.D. Cal. June 26, 2012) ............................................ 28

*Force v. Facebook, Inc.*,
  934 F.3d 53 (2d Cir. 2019) ................................................................... 8

*Fyk v. Facebook, Inc.*,
  808 F. App'x 597 (9th Cir. 2020) ......................................................... 16

*Gavra v. Google Inc.*,
  2013 WL 3788241 (N.D. Cal. July 17, 2013) ........................................... 26

*Goddard v. Google, Inc.*,
  640 F. Supp. 2d 1193 (N.D. Cal. 2009) .................................................. 6, 9

*Green v. AOL*,
  318 F.3d 465 (3d Cir. 2003) ............................................................ 11, 16

*Groth-Hill Land Co., LLC v. Gen. Motors LLC*,
  2013 WL 3853160 (N.D. Cal. July 23, 2013) ........................................... 29

*Habeeb v. State Farm Fire & Cas. Co.*,
  51 F.3d 280, 1995 WL 139229 (9th Cir. 1995) ......................................... 30

████████████████████████ ................................................. 26

████████████████████████ ................................................. 14

v

*Hiramanek v. Cal. Jud. Council,*
  2016 WL 6427870 (N.D. Cal. Oct. 31, 2016)................................................................22

*Humphries v. Newman,*
  2022 WL 612657 (D.D.C. Mar. 2, 2022).....................................................................23

*Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.,*
  129 Cal. App. 4th 1228 (2005)..........................................................................29, 30

*In re Facebook, Inc.,*
  625 S.W.3d 80 (Tex. 2021).................................................................................13

███████████████████████████
  █████████████████████ ...............................................................................23

███████████████████████████
  ████████████████████ .................................................................................18

*Jackson v. Airbnb, Inc.,*
  639 F. Supp. 3d 994 (C.D. Cal. 2022)....................................................................19

*Jacobs v. Meta Platforms, Inc.,*
  2023 WL 2655586 (Cal. Super. Ct. Mar. 10, 2023).........................................................19

*James v. Meow Media, Inc.,*
  300 F.3d 683 (6th Cir. 2002).........................................................................20, 27

*Kane v. Hartford Accident & Indem. Co.,*
  98 Cal. App. 3d 350 (1979)...............................................................................32

*Khoja v. Orexigen Therapeutics, Inc.,*
  899 F.3d 988 (9th Cir. 2018)..............................................................................7

*King v. Facebook, Inc.,*
  572 F. Supp. 3d 776 (N.D. Cal. 2021).................................................................17, 30

███████████████████████████████████████
  ███████████████████████ .................................................................................32

*L.W. through Doe v. Snap Inc,*
  675 F. Supp. 3d 1087 (S.D. Cal. 2023)...........................................................11, 12, 13

█████████████████████████████
  ............................................................................................31

*McIntosh v. United States,*

2008 WL 4492592 (S.D. Cal. Sept. 29, 2008) ............................................................ 28

*Modisette v. Apple Inc*,
  30 Cal. App. 5th 136 (2018) ................................................................................... 31

*Murphy v. Twitter, Inc.*,
  60 Cal. App. 5th 12 (2021) ..................................................................................... 17

*Panaszewicz v. GMAC Mortg., LLC*,
  2013 WL 2252112 (N.D. Cal. May 22, 2013) ........................................................ 29

██████████████████████████ ............................................................................... 26

*Pierson v. Sharp Mem'l Hosp., Inc.*,
  216 Cal. App. 3d 340 (1989) .................................................................................. 18

*Poe v. Health Net, Inc.*,
  2019 WL 13276047 (C.D. Cal. Mar. 14, 2019) ...................................................... 22

*Potter v. Firestone Tire & Rubber Co.*,
  6 Cal. 4th 965 (1993) .............................................................................................. 30

██████████████████████████ ............................................................................... 26

*Riggs v. MySpace, Inc.*,
  444 F. App'x 986 (9th Cir. 2011) ........................................................................... 14

*Rotolo v. San Jose Sports & Ent., LLC*,
  151 Cal. App. 4th 307 (2007) ................................................................................. 27

██████████████████████████ ........................................................................ 18, 19

*Social Media Cases*,
  2023 WL 6847378 (Cal. Super. Ct. Oct. 13, 2023) ........................................... 19, 28

████████████████████████████████ ................................................................... 26

████████████████████████ ................................................................................. 19

██████████████████████████ ............................................................................... 22

*Twitter, Inc. v. Taamneh*,

598 U.S. 471 (2023) ............................................................................................. 32

*Univ. of S. Cal. v. Superior Ct.*,
    30 Cal. App. 5th 429 (2018) ............................................................................ 28

*Whitaker v. Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021) ......................................................................... 21

*White v. S. Cal. Edison Co.*,
    25 Cal. App. 4th 442 (1994) ............................................................................ 29

*Wiener v. Southcoast Childcare Ctrs., Inc.*,
    32 Cal. 4th 1138 (2004) ................................................................................... 32

*Williams v. State of Cal.*,
    34 Cal. 3d 18 (1983) ........................................................................................ 29

*Winter v. G.P. Putnam's Sons*,
    938 F.2d 1033 (9th Cir. 1991) ................................................................... 18, 20

*Wozniak v. YouTube, LLC*,
    100 Cal. App. 5th 893 (2024) ...................................................................... 3, 14

*Ziencik v. Snap, Inc.*,
    2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) .................................................... 19

**Statutes**

18 U.S.C. § 2258A ............................................................................................. 18, 19

18 U.S.C. § 2258B .................................................................................................. 18

18 U.S.C. § 2258E .................................................................................................. 16

47 U.S.C. § 230 .................................................................................................... 6, 7

████████████████████████ ............................................................ 19, 20

████████████ ................................................................................................ 19

████████████ ................................................................................................ 19

████████████ ............................................................................................ 17, 19

████████████ ................................................................................................ 20

████████████ ................................................................................................ 20

**Other Authorities**

2 Owen & Davis on Prods. Liab. (Mary J. Davis, ed., 4th ed., May 2024 Update) ................................ 15

Restatement (Second) of Torts (Am. L. Inst. 1965) .......................................................... 15, 22

Restatement (Third) of Torts: Prod. Liab. (Am. L. Inst. 1998) .................................... 14, 15, 16

Federal Rule of Civil Procedure 8 ............................................................................... 16

Federal Rule of Civil Procedure 12 ............................................................................... 6

1

### NOTICE OF MOTION AND MOTION TO DISMISS

2       PLEASE TAKE NOTICE that, on April 22, 2026, at 9:00 AM, Defendant Apple Inc. ("Apple")

3   will and hereby does move for an order dismissing with prejudice the Second Amended Complaint (Dkt.

4   77-2) ("SAC") under Federal Rules of Civil Procedure 8 and 12(b)(6).  This Motion is based on this

5   Notice; the below Memorandum; the SAC; and any other matters presented at the time of the hearing.

6   ### MEMORANDUM OF POINTS AND AUTHORITIES

7   ## I.    INTRODUCTION AND STATEMENT OF THE ISSUES

8       Despite the Court's explicit caution that, in amending their complaint again, "Plaintiffs must

9   ensure that their claims and subsequent arguments materially differ from those" the Court has twice

10  rejected, Plaintiffs' latest amendments to the existing claims in the SAC are purely cosmetic.  And, rather

11  than fixing the existing claims' flaws, Plaintiffs added several new claims under various tort doctrines,

12  none of which are well pleaded.  Because Plaintiffs continue to ignore the Court's guidance and rulings,

13  and cannot state a claim, the SAC should be dismissed with prejudice.

14      Plaintiffs again allege that, when they were minors in the early 2000s, years before Apple

15  developed and made its iCloud service available to the public, third-party bad actors created child sexual

16  abuse material ("CSAM") of them, which has recirculated online since.  They allege that some bad actors

17  today use iCloud to store and disseminate CSAM generally.  As Apple has explained, CSAM is abhorrent,

18  and Apple has worked hard to fight the spread of CSAM on its services.

19      Based on Apple operating iCloud (and making consumer electronics that can access iCloud), the

20  SAC seeks to hold Apple liable for allegedly knowingly receiving, sending, or possessing CSAM.  These

21  claims include product liability and negligence claims that Plaintiffs continue—improperly—to assert

22  under the laws of *three different states* at once, as well as a hodge-podge of other state-law tort claims.

23  The purported basis for liability is that Apple proposed developing a technology that it hoped could detect

24  known CSAM while preserving users' privacy and security but—after extensive consultation with human

25  rights organizations, privacy and security technologists, child safety advocates, and academics—

26  ultimately pursued and deployed different measures to attempt to thwart the spread of CSAM.  In so doing,

27  Apple endeavored to avoid risks that scanning technologies pose to users' security and privacy, such as

28  by opening the door for universal surveillance of communications and storage systems that hold data

1

pertaining to the most sensitive affairs of Apple's users. Neither Apple's decision to employ privacy- and safety-enhancing technologies such as encryption nor Plaintiffs' disagreement with those decisions is a basis for liability. The Court should dismiss the SAC.

As a threshold issue, Section 230 of the Communications Decency Act ("CDA") bars all of Plaintiffs' claims. The Court has already held that Plaintiffs' now-dismissed federal claim was likely barred under Section 230, Dkt. 74 at 7–8, but all of Plaintiffs' claims seek to impose the same duties on Apple—and are barred for the same reasons. Specifically, Plaintiffs' claims seek to hold Apple liable for allegedly not adequately monitoring, reviewing, or removing CSAM content placed by third parties on iCloud—but Section 230 bars claims "attempting to hold [technology companies] liable for [their] failure to remove (even if automatically) harmful third-party content." *Doe 1 v. Twitter*, 148 F.4th 635, 645 (9th Cir. 2025). And Section 230 likewise bars claims challenging technology companies' decisions about "whether to publish," "review," "or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009). The Ninth Circuit has repeatedly affirmed the dismissal of similar claims at the motion-to-dismiss stage. *See, e.g.*, *Doe v. Grindr Inc.*, 128 F.4th 1148, 1156 (9th Cir. 2025), *cert. denied*, 2025 WL 2906619 (Mem) (U.S. Oct. 14, 2025).

Plaintiffs also assert that Apple should be held liable for allegedly undertaking to detect and remove CSAM from its services by announcing it was developing its new "NeuralHash" tool and then ultimately deciding not to deploy it. This "undertaking" theory is also barred by Section 230 because a plaintiff cannot "escape section 230(c) by labeling as 'negligent undertaking' an action that is quintessentially that of a publisher." *Barnes*, 570 F. 3d at 1103. And here, "the undertaking that [Plaintiffs] allege[] [Apple] failed to perform with due care" is monitoring for and removing CSAM—but monitoring and "removing content is something publishers do." *Id.* Plaintiffs' undertaking theory is *also* barred by Section 230's "additional shield from liability" for "actions taken to restrict access to obscene or otherwise objectionable content." *Id.* at 1105 (discussing 47 U.S.C. § 230(c)(2)(a)).

Plaintiffs' attempts to circumvent Section 230 fail. Plaintiffs assert that their claims focus on supposedly "content-agnostic" decisions. But those choices still "amount to [] publishing decision[s]," *Wozniak v. YouTube, LLC*, 100 Cal. App. 5th 893, 913 (2024), and the Ninth Circuit has repeatedly reaffirmed that plaintiffs may not avoid Section 230 by reframing claims as attacks on "content-neutral

tools used to facilitate communications." *Doe 1 v. Twitter*, 148 F. 4th at 646 (quoting *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1096 (9th Cir. 2019)); *see also Grindr*, 128 F. 4th at 1153 (similar).

Plaintiffs' claims also are all inadequately pleaded. Remarkably, Plaintiffs have *still* "fail[ed] to identify which state law applies" to their product liability and negligence claims (Counts I and III). *Doe v. Apple*, 2025 WL 1266928, at *10 (N.D. Cal. May 1, 2025); *see also* Dkt. No. 74 at 9 (dismissing Plaintiffs' identically pleaded product liability and negligence claims). Regardless, the product liability claim fails because iCloud—an intangible service—is not a "product" for purposes of product liability law under any state's law. All of Plaintiffs' negligence-based claims fail for lack of a cognizable duty. Plaintiffs' negligence per se claim under ███████ law fails again to adequately allege that Apple violated the multiple different state and federal laws that the SAC invokes in conclusory fashion, and also fails to explain which of those statutes fit within the narrow contours of ███████ negligence per se doctrine. Plaintiffs' undertaking claim fails because the putative design of NeuralHash itself did not exacerbate any harm and Plaintiffs have not alleged reliance. And the claim for intentional infliction of emotional distress fails to allege that Apple acted with intent towards Plaintiffs. Finally, each of Plaintiffs' seven claims fail as a matter of law because Plaintiffs have not and cannot establish proximate cause, a necessary element of each claim. The *direct* cause of Plaintiffs' harms is the misconduct of third-party bad actors who create and share CSAM, not iCloud nor Apple's alleged failure to implement Plaintiffs' favored monitoring tool.

Further amendment would not cure these flaws. The SAC should be dismissed with prejudice.

## II.    BACKGROUND[1]

### A.    Plaintiffs' Second Amended Complaint

This Court dismissed Plaintiffs' First Amended Complaint ("FAC") with partial leave to amend only the state-law claims for products liability, negligence, and negligence per se. Dkt. No. 74 at 8–9. Plaintiffs then filed their SAC, re-alleging their products liability and negligence claims under three states' laws and making no material amendments thereto; narrowing their negligence per se claim to be brought under ███████ law only; and adding four additional state-law claims for negligence, negligent undertaking, intentional infliction of emotional distress, and negligence infliction of emotional distress.

---

[1] For this Motion, Apple accepts as true, without conceding, the factual allegations in the SAC.

Plaintiffs' SAC also rephrases the request for relief such that, in addition to damages, it now seeks injunctive relief that would require (1) "throttling, expiration, or suspension" of certain features or accounts in a purportedly "content-agnostic" manner that would still restrict and limit users ability to disseminate content on iCloud; (2) the implementation of a "CSAM detection program for iCloud"; and (3) related monitoring by the Court and counsel and reporting obligations by Apple.  SAC at pp. 63–65.

### B.    iCloud, iMessage, Apple Devices, and Safety Features

iCloud is a service that securely stores users' photos, files, notes, and other data in the cloud and can be used for synchronization across a user's devices.  *See* SAC ¶¶ 46, 53–61.  iCloud is also a website, which allows users to access their iCloud data.  *Id.* ¶ 64.  iMessage is a secure messaging service that allows Apple device users to send and receive texts, images, videos, and audio messages.  *Id.* ¶¶ 36–37.  Messages sent using iMessage are end-to-end encrypted between devices.  iPhone, iPad, and MacBook are, respectively, smartphones, tablets, and portable notebook computers through which users can access iCloud, iMessage, and the internet.  *See id.* ¶¶ 35, 36, 38.

To protect users' privacy and security, iCloud data is encrypted.  *Id.* ¶¶ 53–61.  Users have the choice between two levels of data protection.  *Id.* ¶ 56.  With Standard Data Protection, iCloud data is encrypted but the encryption keys are secured in Apple data centers, so Apple can decrypt users' data on their behalf whenever they need it, such as for data recovery.  *Id.* ¶ 57.  For additional privacy and security, certain data categories (such as Health data) are end-to-end encrypted, meaning the encryption keys are stored only on users' devices, and so Apple cannot access the data.  *See iCloud Data Security Overview*, APPLE, https://support.apple.com/en-us/102651 (last accessed December 16, 2025) (cited at SAC ¶ 54 n.7).  With Advanced Data Protection, other data categories (such as iCloud Backup and Photos) are also end-to-end encrypted and "thereby protect[ed]."  SAC ¶ 58.  Data that is end-to-end encrypted would remain secure even if there were a data breach in the cloud.  *See iCloud Data Security Overview*.  The iCloud Terms & Conditions prohibit users from using iCloud to "engage in any illegal activity" or to "upload, . . . transmit, store, [or] share . . . any Content that is unlawful, harassing, threatening, harmful, . . . obscene, vulgar, . . . or otherwise objectionable."  iCloud Terms & Conditions at Section V.B, https://www.apple.com/legal/internet-services/icloud/ (last accessed December 16, 2025).

### C.     Scanning iCloud for CSAM

The SAC alleges that, in August 2021, at the same time Apple announced other measures to thwart the spread of CSAM, it also announced that it was considering introducing a new technology to scan iCloud photos for already-known CSAM using hash-matching.  *See* SAC ¶¶ 82–84.  One month later, Apple "announced it would delay [its] rollout" of that potential scanning technology.  *Id.* ¶ 136.  Apple "consulted extensively with child safety advocates, human rights organizations, privacy and security technologists, and academics, and having considered scanning technology from virtually every angle, [it] concluded it was not practically possible to implement without ultimately imperiling the security and privacy of [its] users."  Email from E. Neuenschwander (Aug. 31, 2023), available at https://s3.documentcloud.org/documents/23933180/apple-letter-to-heat-initiative.pdf (cited at SAC ¶ 142 & n.42).  As a document cited in the SAC explains, "[s]canning of personal data in the cloud is regularly used by companies to monetize the information of their users.  While some companies have justified those practices, [Apple has] chosen a very different path—one that prioritizes the security and privacy of our users.  Scanning every user's privately stored iCloud content would in our estimation pose serious unintended consequences for our users."  *Id.*  In particular, "[s]canning every user's privately stored iCloud data would create new threat vectors for data thieves to find and exploit" and would "inject the potential for a slippery slope of unintended consequences" such as "open[ing] the door for bulk surveillance."  *Id.*  And "[s]canning systems are also not foolproof and there is documented evidence from other platforms that innocent parties have been swept into" them.  *Id.*  As a result, in December 2022, Apple "announced it would not implement" this iCloud scanning proposal.  SAC ¶ 141.

### D.     Plaintiffs' Images Are Disseminated by Bad Actors Across the Internet

Plaintiffs—who are proceeding under pseudonyms—were exploited when they were minors in the early 2000s by adult relatives to "produce CSAM to share on the internet."  *Id.* ¶¶ 154, 161.  The CSAM images depicting them have allegedly been reported "thousands" of times since the "early 2000s."  *Id.* ¶¶ 150, 157.  Plaintiffs allege generally that third-party bad actors "received, possessed, and distributed" the CSAM, including in criminal cases, and that some of those criminals did so "using Apple products."  *Id.* ¶¶ 167, 169.  Plaintiffs do not allege that Apple itself had knowledge of the content of any specific files these criminals possessed.  Plaintiffs also allege that other members of the putative class had CSAM

depicting them disseminated by third-party bad actors via unspecified means. *See, e.g.*, *id.* ¶¶ 169–79.

## III.   LEGAL STANDARD

A court must dismiss a claim under Rule 12(b)(6) unless the plaintiff has alleged "sufficient factual matter" that, taken as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A "formulaic recitation of the elements" of a claim is not entitled to the presumption of truth. *Id.* at 681. Where a plaintiff alleges insufficient facts or makes allegations that disprove or demonstrate the implausibility of the asserted claim, the claim must be dismissed. *See Twombly*, 550 U.S. at 570.

Section 230, while an "affirmative defense[,] routinely serve[s] as a basis for granting Rule 12(b)(6) motions" as the complaint's well-pleaded factual allegations are assumed to be true. *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1200 n.5 (N.D. Cal. 2009) (citation modified). When deciding a Rule 12(b)(6) motion, the Court may consider documents that are incorporated by reference in the complaint or subject to judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## IV.   ARGUMENT

Plaintiffs' claims are barred by Section 230 of the CDA because they seek to hold Apple liable for (1) allegedly not adequately monitoring, vetting, or removing third-party content, or (2) allegedly undertaking to remove harmful third-party content but doing so in a purportedly negligent fashion. Section 230 does not permit imposing liability on Apple under either basis. And the claims fail on their own terms for multiple independent reasons.[2]

### A.   Section 230 of the Communications Decency Act Bars All of Plaintiffs' Claims.

Section 230 of the CDA bars Plaintiffs' claims. Section 230 includes a broad preemption provision: "[n]o cause of action may be brought and no liability may be imposed under any State . . . law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). At their core, Plaintiffs' claims seek to hold Apple liable on two theories—both of which do so in a manner "inconsistent with" Section 230. *Id.*

---

[2] Apple reserves all rights with respect to choice of law issues and does not concede that any particular state's law should apply to Plaintiffs' state law claims. For purposes of this Motion, Apple applies ▆▆▆ and California law to demonstrate that the SAC is inadequately pleaded.

Plaintiffs' first theory is a *failure-to-monitor theory*—that Apple is liable for third-party CSAM because Apple allegedly did not monitor or remove that content. Plaintiffs' failure-to-monitor theory is barred pursuant to Section 230(c)(1), under which "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Plaintiffs' second theory is an *undertaking theory*—that Apple is liable because the efforts it allegedly undertook to detect CSAM were, according to Plaintiffs, deficient. Plaintiffs' undertaking theory is likewise barred under § 230(c)(1), and it is *also* barred by § 230(c)(2)(A), under which "[n]o provider . . . of an interactive computer service shall be held liable on account of any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers . . . objectionable." 47 U.S.C. § 230(c)(2)(A).

Through Section 230, "Congress made a policy choice not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (citation modified). Section 230 thus "should be construed broadly in favor of immunity." *Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019) (collecting cases). A narrow reading would "cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged—or at least tacitly assented to—the illegality of third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1174–75 (9th Cir. 2008).

While Section 230 sets forth an "affirmative defense," *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024) (citing *Force*, 934 F.3d at 53), courts routinely "affirm [the] dismissal of claims at [the] pleading stage based on Section 230[] immunity" as the basis for the defense is typically "evident from the face of [the] complaint," *Force*, 934 F.3d at 63 n.15 (collecting cases); *see, e.g.*, *Doe 1 v. Twitter*, 148 F.4th at 640 (affirming grant of motion to dismiss in relevant part); *Calise*, 103 F.4th at 746 (same); *Grindr*, 128 F.4th at 1156 (affirming grant of motion to dismiss).

Addressing Section 230 at the outset of litigation is proper under the Ninth Circuit's instruction "that [Section 230] is an immunity statute," which, consistent with Congress's intent, must "be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Roommates*, 521 F.3d at 1174–75; *see also id.* at 1175 n.39 (analogizing Section 230 "immunity"

to "qualified immunity").  Immunity defenses must be resolved at the earliest possible stage; thus, "the Ninth Circuit implicitly has identified a special form of 'prejudice' to defendants who improperly are denied early dismissal of claims" barred by Section 230.  *Goddard*, 640 F. Supp. 2d at 1202.

### 1.    Plaintiffs' Failure-to-Monitor Theory Is Barred By Section 230.

Plaintiffs' failure-to-monitor theory—that Apple should be held liable for not adequately monitoring and removing CSAM from its services—is barred by Section 230.  All three prongs of the Ninth Circuit's Section 230 test are satisfied here from the face of the SAC, accepting all well-pleaded allegations as true.  Apple is "(1) a provider or user of an interactive computer service [("ICS")] (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider."  *Dyroff*, 934 F.3d at 1097 (citation modified). Accordingly, Apple's motion to dismiss based on Section 230 immunity should be granted.

### a)    Apple Is a Provider of Interactive Computer Services.

This Court has already found "no dispute that Apple is a provider of interactive computer services," Dkt. No. 74 at 6, and this prong is therefore met.

### b)    CSAM Is Third-Party Content.

The third-party content prong of the Section 230 test is also satisfied, as the CSAM depicting Plaintiffs is "information provided by another"—Plaintiffs' relatives or other third-party bad actors who created or shared it—not created by Apple.  *See* SAC ¶¶ 153, 160.  Nothing in the SAC suggests otherwise.

### c)    Plaintiffs' Claims Treat Apple as a Publisher or Speaker.

The final prong is also met: Plaintiffs' claims treat Apple as a publisher or speaker of the bad actors' CSAM content because those claims would hold Apple liable for allegedly not adequately monitoring for, reviewing, and removing that content from iCloud.  In analyzing the third prong, "what matters is not the name of the cause of action," but rather "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another."  *Barnes*, 570 F.3d at 1101–02.  Under this test, if Plaintiffs' claims either "[1] spring[] 'from the defendant's status as a publisher,' or if [2] the means to avoid liability requires the defendant to act as a publisher, immunity applies."  *Doe 1 v. Twitter*, 148 F.4th at 642 (quoting *Calise*, 103 F.4th at 742).

"[P]ublication" includes "reviewing" and "deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 57 0F.3d at 1102. It also includes "features that are part and parcel of the overall design and operation of the website." *Fields v. Twitter*, 217 F. Supp. 3d 1116, 1124 (N.D. Cal. 2016). "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Roommates*, 521 F.3d at 1170–71. Section 230 immunity also attaches if the duty the claims seek to impose "obliges the defendant to monitor third-party content—or else face liability." *Calise*, 103 F.4th at 742 (citation modified).

Likewise, Section 230 continues to apply if Plaintiffs frame their challenge as based on "facially neutral features" or "content-neutral tools" used to publish, disseminate, or facilitate content. *Doe 1 v Twitter*, 148 F.4th at 646 (citing *Dyroff*, 934 F.3d at 1095–96, 1098); *see also id.* ("[W]e held that immunity applied to a claim alleging that a neutral . . . tool was negligently designed because it created opportunities for sexual abuse." (discussing *Grindr*, 128 F.4th at 1152–53)). Thus, where plaintiffs assert "claim[s] under state or federal law based on a website operator's [alleged] passive acquiescence in the misconduct of its users"—and those users allegedly "committed their misconduct using electronic tools of general applicability provided by the website operator"—the operator remains "entitled to CDA immunity." *Roommates*, 521 F.3d at 1169 n.24.

Applying these principles, courts routinely find that claims seeking to hold providers liable for bad actors' distribution of CSAM are subject to Section 230 immunity. Most recently, in *Doe 1 v. Twitter*, the Ninth Circuit affirmed the grant of Twitter's motion to dismiss in relevant part because "Plaintiffs [were] attempting to hold Twitter liable for its failure to remove . . . third-party [CSAM]"—a "theory [that] is barred by Section 230." 148 F. 4th at 645. And as another court explained in a case involving the alleged failure to prevent CSAM distribution, Section 230 applied "[b]y definition" because the "theories of liability plainly turn on Defendants' alleged failure to monitor and remove third-party content." *L.W. through Doe v. Snap Inc*, 675 F. Supp. 3d 1087, 1096 (S.D. Cal. 2023). The Ninth Circuit has also held that Section 230 provides immunity for claims—like those Plaintiffs assert here—that would require the platform to "actively vet and evaluate third-party" content. *Calise*, 103 F.4th at 744; *see also Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (Section 230 barred claims seeking to hold MySpace liable for "failure to implement measures that would have prevented" harmful communications as they

were "merely another way of claiming that MySpace was liable for publishing the[m]"); *Green v. AOL*, 318 F.3d 465, 471 (3d Cir. 2003) (similar).

Dismissal is similarly warranted here. Each of Plaintiffs' claims "springs" from the fact that Apple hosts third-party content—*i.e.*, Plaintiffs claim that Apple should be held liable because third parties disseminated CSAM on iCloud. *Doe 1 v. Twitter*, 148 F.4th at 642. Plaintiffs' claims are also barred because they would require Apple to "act as a publisher" in order to avoid liability, *id.*—such as by monitoring content, "throttling" users' ability to share content, or altering their content neutral tools used to disseminate content, as explained below. That is the heartland of what Section 230 immunizes. *See Doe 1 v. Twitter*, 148 F. 4th at 646; *Calise*, 103 F.4th at 744; *Roommates*, 521 F.3d at 1170.

### d)    Product Liability, Negligence-Based, and Emotional Distress Claims

Although the SAC still does not allege a precise "defect" in iCloud, the core of Plaintiffs' design-defect claim appears to be that Apple did not prevent third parties from uploading, storing, and sharing CSAM on iCloud. *See, e.g.*, SAC ¶¶ 242 (Apple "fail[ed] to stop the spread and circulation of CSAM depicting [the] Plaintiffs"), 245 (alleging that design alternatives include "CSAM detection measures"). Similarly, though not clear, that same alleged fault appears to form the core for all of Plaintiffs' negligence-based claims: that Apple allegedly failed to exercise reasonable care when it did not prevent Plaintiffs' relatives or other third parties from uploading, storing, and sharing CSAM. *See, e.g.*, *id.* ¶¶ 291–92, 320; *see also id.* ¶ 304.b (faulting Apple for "withdrawing" a CSAM-monitoring "program"). And Plaintiffs' emotional distress claims are premised on the notion that they suffered emotional distress because Apple allegedly failed to block imagery of them. *See, e.g.*, *id.* ¶¶ 306, 312.

The duties plaintiffs seek to invoke all "spring[] from the defendant's status as publisher"—*i.e.*, because of how Apple permits users to disseminate and share third-party content—and, accordingly, "immunity applies." *Doe 1 v. Twitter*, 148 F. 4th at 642. Immunity *also* applies because "the means to avoid liability requires [Apple] to act as a publisher." *Id.* Plaintiffs' claims would impermissibly impose a duty on Apple to remove third-party content or "vet and evaluate third-party" content. *Calise*, 103 F.4th at 744 (negligence claim barred). These are the type of CSAM claims that courts have repeatedly held subject to Section 230 immunity. *See, e.g.*, *Doe 1 v. Twitter*, 148 F. 4th at 643; *L.W.*, 675 F. Supp. 3d at 1096; *Doe v. Reddit, Inc.*, 2021 WL 4348731, at *3 (C.D. Cal. July 12, 2021). This Court's decision in

*Doe v. Apple* is instructive: although the name of the cause of action that the Court examined was different, the federal CSAM claim the Court deemed "likely barred" there would impose the same duties as Plaintiffs' claims here: searching for potential CSAM, evaluating whether content is CSAM, and removing content if it is. 2025 WL 1266928, at *5. The Court should reach the same conclusion here. *See Doe (K.B.) v. Backpage.com, LLC*, 768 F.Supp.3d 1057, 1067 (N.D. Cal. 2025) (granting motion to dismiss product liability and negligence claims as barred by Section 230). And because Section 230 does not depend on the state law at issue, dismissal should be with prejudice. *See id.*

Plaintiffs cannot avoid Section 230 by arguing their claims would hold Apple liable for its actions in designing iCloud or its alleged lack of safety features. *See Doe 1 v. Twitter*, 148 F. 4th at 646 (holding that Section 230 barred Plaintiffs' features-based "amplification" theory because the "claim[s still] treated the website as a publisher of third-party content, even if the website's tools helped disseminate and promote that content"); *Doe (K.B.)*, 768 F.Supp.3d at 1065, 1068 (Section 230 barred claim premised on platform's alleged lack of safety "features" as the features implicated the defendant's "role as [the] facilitator and publisher of third-party content" (quoting *Grindr*, 128 F.4th at 1153)); *see also, e.g., L.W.*, 675 F. Supp. 3d at 1096; *Doe v. Snap, Inc.*, 2022 WL 2528615, at *14 (S.D. Tex. July 7, 2022) (negligent design claim based on "allow[ing] messages to automatically delete" barred), *aff'd* 2023 WL 4174061 (5th Cir. June 26, 2023). That theory still seeks to impose liability on Apple for not reviewing third-party content or for the design of its "tools used to facilitate communications" by users. *Doe 1 v. Twitter*, 148 F. 4th at 646; *see also In re Facebook, Inc.*, 625 S.W.3d 80, 93–94 (Tex. 2021) ("company's alleged lack of safety features is only relevant" because they allegedly "would have averted wrongful communication" (citation modified)); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Wozniak*, 100 Cal. App. 5th at 909, 913 (finding Section 230 immunity applied to a negligence claim related to the failure to implement tools that would remove certain content, despite plaintiffs characterizing the claim as a "fail[ure] to implement reasonable security measures").

Finally, Plaintiffs cannot circumvent Section 230 by seeking *relief* that is supposedly "content-agnostic." SAC at pp. 64. Section 230 is regularly found to apply to content-neutral tools used to publish

content—the exact type of tools Plaintiffs claim to seek. *See, e.g.*, *Doe 1 v. Twitter*, 148 F.4th at 646; *Dyroff*, 934 F.3d at 1101, *Calise*, 103 F.4th at 746. Yet the requested relief would require Apple to monitor for, remove, or restrict third-party publications because the "links" they ask Apple to "throttle" and "accounts" they ask Apple to remove— SAC at pp. 63—*are themselves third-party content*. *See, e.g.*, *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) (dismissing negligence claims on grounds that the deletion of a user profile was protected by Section 230); *Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 884 (N.D. Cal. 2022) ("Courts have routinely rejected a wide variety of civil claims [related to] removing or blocking content or suspending or deleting accounts (or failing to do so) on the grounds they are barred by the CDA.") (citation modified). Through the relief sought, including the request for damages, Plaintiffs seek to hold Apple liable for the purported failure to monitor and remove third-party content—quintessential publishing conduct that is subject to Section 230 immunity.

### e) Negligence Per Se Claim

Count II is framed as a negligence per se claim, but the underlying factual allegations—and the duty the claim is premised on—is ultimately the same: Plaintiffs allege harm from the third-party dissemination of CSAM and that Apple failed to "implement effective proactive detection measures to prevent the distribution of known hashed CSAM." SAC ¶ 258. The basic premise is mistaken, because none of the various statutes Plaintiffs rely on imposes such a requirement. *See infra* IV.D. But even setting that aside, the theory would necessarily require Apple to monitor and remove third-party content.

### 2.    Plaintiffs' Undertaking Theory Is Likewise Barred by Section 230.

Section 230 also bars Plaintiffs' claims to the extent they are premised on Apple's allegedly negligent "undertaking" to monitor and remove for CSAM through NeuralHash. Plaintiffs plead this theory most prominently in their negligent undertaking claim. *See* SAC ¶¶ 299–308. This theory is also a distinct component of Plaintiffs' negligence and negligent infliction of emotional distress claims. *See* SAC ¶¶ 281, 288–93, 320–21.

Plaintiffs' "undertaking" allegations are puzzling because they fault Apple for supposedly negligently deploying NeuralHash—a technology "designed to detect known CSAM" that was never rolled out on users' devices to detect CSAM: it was "cancelled" *before* it was ever implemented. SAC ¶ 281. Accordingly, this theory suffers from an obvious proximate causation problem. *See infra* IV.I. In

any event, for purposes of Section 230, the theory is barred because it is premised on the assertion that NeuralHash should have been designed to better detect CSAM. SAC ¶ 135. That has the same fundamental flaw as Plaintiffs' other theories: a plaintiff cannot "escape section 230(c) by labeling as 'negligent undertaking' an action that is quintessentially that of a publisher." *Barnes*, 570 F. 3d at 1103. And here, "the undertaking that [Plaintiffs] allege[] [Apple] failed to perform with due care" is monitoring for and removing CSAM—but monitoring and "removing content is something publishers do." *Id.* Put otherwise, a claim requiring a publisher to design a better monitoring system "would require [the defendant] to monitor third-party content," and so runs afoul of Section 230. *Grindr*, 128 F.4th at 1153; *see also, e.g.*, *Doe 1 v. Twitter*, 148 F.4th at 645–46 (Section 230 barred claim that Twitter should have "removed" CSAM after it had been "reported" to Twitter); *Doe (K.B.)*, 768 F.Supp.3d at 1066 (Section 230 bars claims where the "justification for why [defendant] may be held liable springs from its [alleged] failure to monitor . . . third-party content").

Plaintiffs' undertaking theory also fails under the "additional shield" from liability created by Section 230(c)(2), under which internet service providers are immune from liability for actions voluntarily taken to restrict access to obscene or otherwise objectionable content. *See Barnes*, 570 F. 3d at 1105; *see also Fyk v. Facebook, Inc.*, 808 F. App'x 597, 598 (9th Cir. 2020) ("§ 230(c)(2)(a) provides an additional shield from liability" (citation modified)). At its core, Plaintiffs' undertaking theory is predicated on Apple's alleged "duty to exercise reasonable care in performing and terminating its voluntary safety undertaking [NeuralHash]." SAC ¶ 304. But "Section 230(c)(2) does not *require*" a provider to moderate content and, to the extent such efforts are undertaken, it "allow[s] [a provider] to [moderate] without risking liability for doing so." *Green*, 318 F.3d at 7 (emphasis in original); *see Craft v. Musk*, 2023 WL 2918739, at *3 (N.D. Cal. Apr. 12, 2023) (granting motion to dismiss claim as barred by § 230(c)(2)(A)).

Plaintiffs also cannot hold Apple liable for its supposed failure "to communicate with victims and stakeholders" regarding Apple's pausing of its NeuralHash development and "alternative deliverables" for scanning CSAM.[3] As with Plaintiffs' other claims, this alleged breach is ultimately premised on a

---

[3] This claim is contradicted by Plaintiffs' own allegations, which note that Apple publicly announced in September 2021 that it was pausing development of NeuralHash, and in December 2022 that it had decided not to move forward with implementing scanning technology. SAC ¶¶ 136, 141; *infra* IV.F.

13

supposed duty to proactively detect CSAM on Apple's iCloud service and remove it—the precise type of monitoring and removing on which Section 230 prevents liability. Despite Plaintiffs' attempts to argue that Apple was somehow bound to launch NeuralHash by its public announcements of the tool, courts have found that generally applicable statements or policies (as distinct from specific contractual promises to individuals) are not a basis for eliminating Section 230 immunity. *See King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 795 (N.D. Cal. 2021) (contrasting *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 29 (2021) in which the general application of Twitter's Hateful Conduct Policy was granted section 230 immunity, to *Barnes*, 570 F. 3d at 1108–09, in which a "specific personal promise made by an employee" to Plaintiff herself to remove certain content was found to create a claim for promissory estoppel that was not barred by Section 230). Plaintiffs have not and cannot allege that Apple entered into a contract or made a specific promise *to them* to implement NeuralHash; therefore, the decision not to launch NeuralHash (and public statements regarding that decision) is a "paradigmatic editorial decision[] . . . protected by Section 230." *King*, 572 F. Supp. 3d at 794 (citation modified).

**B.    The Previously Dismissed State-Law Claims for Strict Liability and Negligence Again Fail to Plead Which State's Law They Invoke (Claims I and III).**

Plaintiffs once again failed to cure the deficiency on which the Court previously dismissed their strict liability and negligence claims: they fail to identify the state's law on which these claims are purportedly based. *See Doe v. Apple*, 2025 WL 1266928, at *10 (dismissing claims for "failure to identify which state law applies"); Dkt. 74 at 8–9 (same). Rather than try to cure that deficiency, Plaintiffs improperly re-alleged precisely the same claims under the same three laws at once. *See* SAC ¶¶ 231–255, 277–282. This Court should dismiss them with prejudice given Plaintiffs' failure to remedy the defect identified by the Court. Regardless, these claims fail under all three state law regimes Plaintiffs invoke.

**C.    Plaintiffs Have Not Plausibly Pleaded a Product Liability Claim (Claim I).**

Plaintiffs' product liability claim should be dismissed because iCloud is not a product within the scope of California, ████████████ product liability law. The Third Restatement defines a product as "tangible personal property distributed commercially for use or consumption." *See* Restatement (Third) of Torts: Prod. Liab., § 19 (a)-(b) (Am. L. Inst. 1998). And the Second Restatement identifies as "products" only "tangible items, such as tires, automobiles, and insecticides." *Winter v. G.P.*

14

*Putnam's Sons*, 938 F.2d 1033, 1034 (9th Cir. 1991) (citing Restatement (Second) of Torts § 402A (Am. L. Inst. 1965)). Courts nationwide have "opposed extending products liability law to . . . intangible thoughts, ideas, and messages contained within . . . website materials" because the public policy goals underlying product liability are rooted in tangibility. 2 Owen & Davis on Prods. Liab., § 17:28 (Mary J. Davis, ed., 4th ed., May 2024 Update). Courts have adopted this principle when applying the law of all three states at issue. *See, e.g., id.* (in California, "[p]roducts liability law is geared to[wards] the tangible world"); *Pierson v. Sharp Mem'l Hosp., Inc.*, 216 Cal. App. 3d 340, 345 (1989) (defining product as "a physical article which results from a manufacturing process and is ultimately delivered to a consumer"); ███████████████████████████████████████████████ (collecting cases demonstrating that a product under ██████ law is a physical good, not an intangible service); ███████████████ ███████████████████████████████████████████ (dismissing strict product liability claim as a "website" is not "a product'"); ███████████████████████████████ ███████ (in ██████████, product liability requires "the passing of possession of some tangible object"); ████████████████████████████████████ ("ideas, information, communications and drawings can[not] be considered products within the meaning of ██████████ law," as a "product" is limited to "finished items with a tangible form"); ████████████████████████████ ██████████████████████████ (under ██████████ law, strict liability applies only to alleged design defects that cause "physical harm . . . to the ultimate user or consumer, or to his property").

Further, "[c]ourts are unanimous in refusing to categorize commercially-provided services as products." Restatement (Third) of Torts § 19 cmt. F; *see, e.g., Social Media Cases*, 2023 WL 6847378, at *15 (Cal. Super. Ct. Oct. 13, 2023) ("services, even when provided commercially, are not products"); ████████████████████████████ (same under ██████████ law); ██████████████████████████████ product liability does not apply to "services"). As a result, courts reject product liability claims premised on services, including those provided through online platforms or other intangibles. *See, e.g., Jacobs v. Meta Platforms, Inc.*, 2023 WL 2655586, at *4 (Cal. Super. Ct. Mar. 10, 2023) (dismissing product liability claim because "Facebook is more akin to a service than a product"); *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *1, *4 (C.D. Cal. Feb. 3, 2023) (similar); *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1011 (C.D. Cal. 2022) (similar); ████████████████████████████ (similar). Here, the product liability

claim is predicated on iCloud, an intangible service that, among other features, "backs up, stores, and synchronizes data across multiple devices using remote computer servers accessed through the internet." SAC ¶ 46. Indeed, Plaintiffs' negligence per se claim is based in part on alleged violations of statutes that only apply to providers of "electronic communication service[s]" or "remote computing service[s]." 18 U.S.C. § 2258E.

In addition to excluding services, product liability law does not reach information or content, because that would raise "significant constitutional problems under the First Amendment that ought to be avoided." *James v. Meow Media, Inc.*, 300 F.3d 683, 695 (6th Cir. 2002). Here, the product liability claim is premised on the alleged distribution of illicit *content*—specifically, CSAM—via iCloud. Courts have held that images "are not sufficiently 'tangible' to constitute products." *Id.* at 701 (citing *Winter*, 938 F.2d at 1036). Because the product liability claim is based on intangible content, it must be dismissed. *See, e.g.*, *Est. of B.H. v. Netflix, Inc.*, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022) (dismissing product liability claims because "[t]here is no strict liability for books, movies, or other forms of media" rooted in intangible content), *aff'd*, 2024 WL 808797 (9th Cir. Feb. 27, 2024), *vacated on other grounds*, 145 S. Ct. 1165 (2025); *Winter*, 938 F.2d at 1034, 1036 (declining "to expand products liability law to embrace the ideas and expression in a book").[4]

### D.    Plaintiffs Cannot Bring a Negligence Per Se Claim (Claim II).

The negligence per se claim is based on a patchwork of facially inapplicable federal and ███████ state laws. But, in contravention of Rule 8, Plaintiffs do not attempt to explain *how* Apple purportedly violated these statutes—and that pleading failure alone requires dismissal. Further, Plaintiffs have failed

---

[4] To the extent that the SAC references devices like iPhone, iPad, and MacBook, or that iCloud utilizes "physical . . . servers" and "data centers," those scattered allegations do not change the reality that the claims are targeted at iCloud, not a "design defect" of Apple's hardware devices. Plaintiffs do not allege that iCloud is *only* accessible through Apple devices (nor could they); and Plaintiffs' claim is not based on any physical flaw of an Apple device—it is based on the design of the "internet"-based iCloud service that can be accessed via any internet-connected computer (whether made by Apple or not) and on content provided by third-party users. SAC ¶ 46; *see* Restatement (Third) of Torts § 19 cmt. (d) ("Although a tangible medium such as a book, itself clearly a product, delivers the information, the plaintiff's grievance in such cases is with the information, not with the tangible medium."). And even if the Apple devices were the basis of Plaintiffs' product liability claims (they are not), Plaintiffs have failed to allege what the purported design defect in those devices is—as opposed to Apple not scanning iCloud for CSAM.

to plead a violation of any underlying predicate statute (state or federal) or explain how any of those statutes fit within the narrow contours of ███████ negligence per se doctrine.

### 1.    Plaintiffs' Improper Shotgun Pleading Violates Rule 8.

The SAC's negligence per se claim is one form of "impermissible 'shotgun' pleading" because "it fails to connect its factual allegations to the elements comprising plaintiff's claims such that it denies the parties adequate notice of the allegations supporting each cause of action." *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 943 (D. Or. 2020). By summarily invoking seven different state and federal statutes as the purported predicate for this claim (SAC ¶¶ 260–264),[5] the SAC fails to satisfy Rule 8's most basic requirement: it fails to explain *how* the factual allegations amount to legal violations. *See, e.g.*, *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021); *Ashcroft*, 556 U.S. at 678 (a "formulaic recitation of the elements" of a claim does not suffice under Rule 8). Simply asserting—as the SAC does—that Apple violated over a half-dozen statutes without any explanation of how the elements of each statute are supposedly satisfied falls short of Rule 8's mandate. *See, e.g.*, *Poe v. Health Net, Inc.*, 2019 WL 13276047, at *4 (C.D. Cal. Mar. 14, 2019) (granting motion to dismiss; "[t]he Complaint simply lists several state and federal laws with no factual allegations" explaining how "Defendants . . . violated any of the[m]"); *A.B.*, 484 F. Supp. 3d at 943 (similar); *Hiramanek v. Cal. Jud. Council*, 2016 WL 6427870, at *3 (N.D. Cal. Oct. 31, 2016) (similar), *aff'd*, 754 F. App'x 580 (9th Cir. 2019).

### 2.    ███████ Recognizes Negligence Per Se Claims Only in Limited Circumstances that Plaintiffs Have Not Alleged.

The negligence per se claim also fails as Plaintiffs have not alleged how this doctrine applies. Under ███████ law, negligence per se extends only to a narrow category of statutes and a narrow category of persons meant to be protected by those statutes. *See, e.g.*, ███████ ███████ ("violation of a statute does not automatically constitute negligence per se"; to qualify, "the statute must evidence an intention . . . that from disregard of its command a liability for resultant damages shall arise" and the court must examine "(1) whether the

---

[5] Although Plaintiffs cite seven federal and ███████ laws in the SAC, ¶¶ 260–64, Plaintiffs defended only one of these laws—███████—in their opposition to Apple's motion to dismiss the FAC. Dkt. No. 65 at 23. Apple will address each of the statutes cited in Plaintiffs' SAC, but Plaintiffs have waived any argument as to those statutes not previously defended.

plaintiff is one of the class for whose particular benefit the statute was enacted, (2) whether a finding of negligence per se for violation of the statute would promote the legislative purpose, and (3) whether creation of such liability would be consistent with the legislative scheme" (citation modified).  The SAC fails to identify which particular statutes Plaintiffs consider predicates for this claim to the extent it is based on ███████ law but many of the statutes identified could not qualify under ███████ test.[6]

### 3.    Plaintiffs Fail to Plead a Violation of a Predicate Federal Law.

Plaintiffs also have not adequately alleged a violation of the predicate federal CSAM reporting statutes (18 U.S.C. §§ 2258A and 2258B) that they cite in support of their negligence per se claims.

To begin, these federal statutes intentionally do not include a private right of action, and as a matter of ███████ law Plaintiffs cannot avoid Congress's choice by recasting a claim under the statutes as a negligence per se claim.  *See, e.g.*, ████████████████████████████ ██████████████████ ("Plaintiff's negligence per se claim is not viable under ███████ law because [the predicate federal statute] does not provide a private right of action"; "allowing Plaintiff's . . . claim to proceed . . . would be inconsistent with the legislative scheme" (citations omitted)) (citing cases).  Here, "[a]lthough Section 2258A establishes a duty to report under criminal law, that section does not purport to establish a private right of action."  *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 926 (N.D. Cal. 2021), *aff'd in part, rev'd in part*, 2023 WL 3220912 (9th Cir. May 3, 2023) (Section 2258A ruling not appealed); *see also Humphries v. Newman*, 2022 WL 612657, at *5 (D.D.C. Mar. 2, 2022) (same), *aff'd*, 2022 WL 3449226 (D.C. Cir. Aug. 11, 2022); *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 843 (C.D. Cal. 2021) (same).  Nor does Section 2258B (which is a *limitation* on liability, not a cause of action) provide a private right of action.  *Doe v. Twitter*, 555 F. Supp. 3d at 926.  Section 2258A is explicit that "[t]he Attorney General shall enforce this section."  18 U.S.C. § 2258A(d)(1).  This intentional choice would mean nothing if private parties could "enforce this section" by bringing the same claim under a negligence per se theory.

Further, this claim purports to require Apple to "implement effective proactive detection measures to prevent the distribution of known hashed CSAM."  SAC ¶ 258.  But the statutes on which the claim

---

[6] Should Plaintiffs identify particular statutes in their Opposition that they claim satisfy ███████ test, Apple reserves the right to address those statutes in more detail in its Reply.

purports to be based are clear that federal law does *not* impose a duty to affirmatively search for or detect

CSAM; instead, the duty is to report apparent CSAM *if* the provider has actual knowledge of such CSAM.

*See* 18 U.S.C. § 2258A(f)(3) ("Nothing in this section shall be construed to require a provider to . . .

affirmatively search, screen, or scan for facts or circumstances described in sections (a) and (b).").

Critically, the SAC fails to allege that Apple had actual knowledge of the CSAM at issue here.

Finally, the claim does not allege that Apple failed to report known CSAM when it was found.

There is not a single allegation that Apple had actual knowledge of a specific piece of apparent CSAM

depicting either Plaintiff and failed to report it.  Indeed, the SAC's overarching theory is that Apple does

*not* scan encrypted iCloud content for known CSAM at all (and thus would lack any actual knowledge).

### 4.    Plaintiffs Fail to Plead a Violation of a Predicate State Law.

Plaintiffs also have not adequately alleged a violation of any of the six civil and criminal ▆▆

▆▆ state laws summarily invoked in the SAC.[7]  Many of the statutes prohibit specific types of conduct

with respect to CSAM or other obscene or lewd material (such as possession, distribution, or display) only

when that conduct is done *knowingly*—that is, with actual knowledge of the nature of the specific piece

of CSAM or obscene material.[8]  But there are no factual allegations reflecting that Apple "knowingly"

undertook any of those activities with respect to the CSAM at issue in this case, which was created,

possessed, and distributed by third-party bad actors unconnected to Apple.  *See* Dkt. No. 74 at 7–8.

In addition, many of the statutes are predicated on conduct that the SAC nowhere factually alleges

that *Apple* engaged in.[9]  Some, for instance, prohibit conduct like "promotion" or "production" of obscene

material (which Apple did not do).[10]  Others prohibit "public" displays of obscene material (same).[11]  Still

others are predicated on the offender engaging in a sale, lease, or similar transaction of obscene material

---

[7] Because Plaintiffs' theories of liability under these laws are unexplained and numerous, this section is not exhaustive, and Apple reserves the right to argue that the claim is deficient in other ways if the Opposition attempts to clarify Plaintiffs' theories under any of these statutes.

[8] *See* ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

[9] *See* ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.

[10] ▆▆▆▆▆▆▆▆▆▆▆▆▆

[11] ▆▆▆▆▆▆▆▆▆▆    ▆▆▆▆▆▆ of this chapter does not by its terms appear to require a public display, but criminalizes what is often called "revenge porn," which is not what this case concerns.

(same).[12]  And for statutes prohibiting "possession" or "distribution," Apple cannot qualify as the actor that undertook the prohibited conduct—as opposed to the third-party bad actors that did so.[13]  The SAC also cites ███████████████, which is facially inapplicable to the allegations here as it authorizes the state to destroy certain unauthorized recordings of licensed works.  There is no allegation that Apple recorded licensed works.

### E.    Plaintiffs Have Not Plausibly Pleaded Any Negligence-Based Claims (Claims III–V, VII).

Plaintiffs bring four separate negligence-based claims that require a showing of duty:[14]  (1) Claim III, a claim for negligence by plaintiffs and the putative class asserted simultaneously under California, ███████████████ law; (2) Claim IV, a claim for negligence by plaintiffs under California law; (3) Claim V, a claim for negligent undertaking by plaintiffs and the putative class under California law; and (4) Count VII, a claim for negligent infliction of emotional distress by plaintiffs and the putative class under California law.

Because the SAC does not allege any recognized legal duty, a required element of any negligence claim, each of these claims fail as a matter of law.  *See Apex Directional Drilling v. SHN Consulting Eng'rs & Geologists, Inc.*, 119 F. Supp. 3d 1117, 1122 (N.D. Cal. 2015) ("[t]he threshold element of a cause of action for negligence is the existence of a duty"); ███████████████ ███████████████ (similar); ███████████████ ███████████████ (similar).  In *Dyroff*, for example, the Ninth Circuit refused to find that a website owed users a duty, as "[n]o website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content."  934 F.3d at 1101; *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 851 (W.D. Tex. 2007) (website did not owe duty to adopt safety measures), *aff'd*, 528 F.3d 413 (5th Cir. 2008).

---

[12] ███████████████████

[13] Another cited statute provides for the seizure of assets following a violation of the statutes discussed above.  ███████████ (seizure of assets used).  In addition to being entirely inapposite, it cannot serve as a basis for Plaintiff's claims because it depends on a violation of the above predicate statutes.

[14] Count II (negligence per se) is treated separately, as negligence per se substitutes a violation of predicate law in place of establishing a duty otherwise owed to the plaintiff.  *See supra* IV.D.

Apple owes no legal duty to prevent harm caused by the unlawful acts of third parties. *See Durden v. United States*, 736 F.3d 296, 304 (4th Cir. 2013) ("there is neither a duty to control the actions of a third party, nor to protect another from a third party"); *Gavra v. Google Inc.*, 2013 WL 3788241, at *3 (N.D. Cal. July 17, 2013) ("Google has assumed no affirmative duty to protect Plaintiffs from extortion . . ."); ██████████████████████████████████████████ ("Generally, the law imposes no duty to control the conduct of a third party to protect others from harm." (citing ████████ ██████████████████████████ (similar). In fact, "the defendant owes no legal duty to the plaintiff" if "the defendant has neither performed an act that increases the risk of injury to the plaintiff nor sits in a relation to the parties that creates an affirmative duty to protect the plaintiff from harm." *Brown v. USA Taekwondo*, 483 P.3d 159, 166 (Cal. 2021). And the Ninth Circuit has explained that a defendant's inaction or "nonfeasance" does not create a duty of care where none existed prior. *See Dyroff*, 934 F.3d at 1100. Nor does the tort law principle of a "special relationship" create a general duty of care between Apple and third-party victims of child sexual abuse. Courts have refused to apply the "special relationship" principle even to claims by users of online platforms. *See id.* at 1101 ("[N]o special relationship [exists] between Facebook and its users."); *see also, e.g.*, *James*, 300 F.3d at 694 (websites, video game manufacturers, and movie producers had no "special relationship" with students killed by classmate). Plaintiffs allege *no* relationship between themselves and Apple. Plaintiffs' apparent theory that Apple owed them a duty of care to prevent CSAM distribution by third parties via iCloud, SAC ¶¶ 278–79, is thus insufficient as a matter of law.

## F. Plaintiffs Have Not Plausibly Pleaded a Negligent Undertaking Claim (Claims IV–V).

Plaintiffs' negligent undertaking claim rests on a narrow doctrine that courts have generally "refused to apply" as it is "not favored in the law." *Rotolo v. San Jose Sports & Ent., LLC*, 151 Cal. App. 4th 307, 336 (2007). Plaintiffs have not successfully invoked that doctrine for two independent reasons.

*First*, Plaintiffs' claim is premised on purported deficiencies in the design and ultimate pre-launch termination of NeuralHash. SAC ¶¶ 288–91, 304. But a negligent undertaking claim must be predicated on "affirmative, deliberate conduct" by the defendant, not an omission. *Coyoy v. City of Eloy*, 859 Fed. App'x 96, 97 (9th Cir. 2021). Thus, any such claim cannot be premised on Apple's "termination" of or

decision not to implement NeuralHash.  Moreover, a fundamental requirement of a negligent undertaking claim is that the defendant's affirmative undertaking must have *increased* a preexisting risk of harm—not just "fail[ed] to alleviate a risk" already present. *Univ. of S. Cal. v. Superior Ct.*, 30 Cal. App. 5th 429, 450 (2018) (citing *Paz v. State of Cal.*, 22 Cal. 4th 553, 560 (2000)); *see also McIntosh v. United States*, 2008 WL 4492592, at *8 (S.D. Cal. Sept. 29, 2008) (undertaking must result in a "risk of harm [that] is greater than if [Defendants] had done nothing at all"); *Social Media Cases*, 2023 WL 6847378, at *40 ("[T]he increase of risk must be compared with a situation in which *no such services* are provided.").

Here, Plaintiffs' undertaking claim concerns a purported failure by Apple to reduce a pre-existing society-wide risk of harm—one that has existed long before iCloud, including for the two decades that Plaintiffs' allege that their CSAM has been circulating.  It does not concern a harm *created by virtue of the undertaking*.  Plaintiffs do not allege that if Apple never attempted to design NeuralHash at all, then CSAM depicting them would be less prevalent.  Their claim therefore fails because they do not, and cannot, allege that an affirmative "undertaking" by Apple resulted in a "risk of harm [that] is greater than if [Apple] had done nothing at all."  *McIntosh*, 2008 WL 4492592, at *8; *see also Paz*, 22 Cal. 4th at 560 ("[A] failure to alleviate a risk cannot be regarded as tantamount to increasing that risk."); *Von Batsch v. Am. Dist. Tel. Co.*, 175 Cal. App. 3d 1111, 1124 (1985) (defendants not liable where they "[a]t most . . . merely failed to eliminate the [preexisting] danger").

*Second*, Plaintiffs also fail to adequately allege reliance on any undertaking.  Plaintiffs assert that "Plaintiffs, the Class, other victims, advocates, and law enforcement reasonably relied on Apple's undertaking and public representations."  SAC ¶ 303.  That conclusory assertion is insufficient to withstand a motion to dismiss.  *See, e.g.*, *Flores v. Wells Fargo Bank, N.A.*, 2012 WL 2427227, at *7 (N.D. Cal. June 26, 2012) (granting motion to dismiss; allegations without specific facts establishing reliance do not suffice).  Ultimately, Plaintiffs fail to explain how, factually, they "in some manner relied on" the undertaking by "foregoing other protective actions," as is required to state a claim.  *White v. S. Cal. Edison Co.*, 25 Cal. App. 4th 442, 451 (1994) (citing Restatement (Second) of Torts § 324A); *see also Panaszewicz v. GMAC Mortg., LLC*, 2013 WL 2252112, at *5 (N.D. Cal. May 22, 2013) ("[d]etrimental reliance requires a showing that plaintiff has undertaken a sufficient change of position in reliance" on Defendants' actions); *Williams v. State of Cal.*, 34 Cal. 3d 18, 28 (1983) (similar).

**G.    Plaintiffs Have Not Plausibly Pleaded an Intentional Infliction of Emotional Distress Claim (Claim VI).**

Plaintiffs made no attempt to establish intent—the requisite *mens rea* to allege a claim of intentional infliction of emotional distress.  A claim for intentional infliction of emotional distress typically requires a showing of either intent or reckless disregard by the defendant to the probability of causing emotional distress.  *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1259 (2005).  However, where, as here, a plaintiff's claim is based on a *failure* to act, that plaintiff must allege "an *intent* to cause injury through inaction."  *Atkinson v. United States*, 2016 WL 9455261, at *8 (S.D. Cal., Jan. 4, 2016) (collecting cases from C.D. Cal., E.D. Cal., and Cal. Ct. App.)  To be intentional, the conduct must be "directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware."  *Christensen v. Superior Ct.*, 54 Cal. 3d 868, 903 (1991); *see also Groth-Hill Land Co., LLC v. Gen. Motors LLC*, 2013 WL 3853160, at *17 (N.D. Cal. July 23, 2013) (similar).  Plaintiffs plead no facts to establish that Apple's actions were directed to Plaintiffs or occurred in their presence (nor could they).

Plaintiffs also fail to allege that Apple's actions surpass the high bar of extreme and outrageous conduct, which is conduct "so extreme as to exceed all bounds of that usually tolerated in a civil society."  *Huntingdon*, 129 Cal. App. 4th at 1259, *see also Habeeb v. State Farm Fire & Cas. Co.*, 51 F.3d 280, 1995 WL 139229, at *3 (9th Cir. 1995).  Plaintiffs instead allege that Apple decided to "prioritize the security and privacy of [its] users."  SAC ¶ 142.  This decision, many degrees of separation removed from Plaintiffs and certainly not done with any intent towards them, is not the type of conduct contemplated by this doctrine.

**H.    Plaintiffs Have Not Plausibly Pleaded a Negligent Infliction of Emotional Distress Claim (Claim VII).**

"As for the claim for negligent infliction of emotional distress, there is no such 'independent tort.'"  *King*, 572 F. Supp. 3d at 785 (citation omitted) (applying California law and granting motion to dismiss); *see also, e.g.*, *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993) (similar); *Huntingdon*, 129 Cal. App. 4th at 1264 (similar).  Nor is there a recognized duty to avoid negligently causing another emotional distress.  *Potter*, 6 Cal. 4th at 984.  Instead, "the tort is negligence," and plaintiffs must establish that the defendant breached some other duty owed to them.  *Id.*  Because Plaintiffs fail to establish the

23

1    necessary elements of duty and causation, *see supra* IV.E and *infra* IV.I, their claim for negligent infliction

2    of emotional distress must fail.

3    **I.    Plaintiffs Cannot Establish that Apple Proximately Caused Their Injuries (Claims I–VII).**

4    All seven of Plaintiffs' stated claims fail as a matter of law for an additional reason: they do not

5    adequately allege proximate causation, a necessary element of each claim.  When courts assess "proximate

6    causation, the central question is whether the alleged [misconduct] led directly to the plaintiff's injuries."

7    *Fields v. Twitter*, 881 F.3d 739, 747 (9th Cir. 2018) ("*Fields II*") (citation omitted).  In applying this

8    directness requirement, the "general tendency" of the "common[] law" is "not to go beyond the first step."

9    *Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 189, 203 (2017) (citation omitted); *see Modisette v.*

10   *Apple Inc*, 30 Cal. App. 5th 136, 147, 155 (2018) (CA law);

11

12

13   Here, the direct cause of Plaintiffs' harms is not iCloud, but the misconduct of the third-party bad

14   actors described in the SAC.  *See* SAC ¶¶ 164, 166 (alleging Plaintiffs' adult relatives exploited them

15   when they were children, and then unidentified "criminals [started to] possess, trade, and distribute the

16   CSAM depicting them" including, necessarily, on platforms other than iCloud).  Indeed, courts have

17   repeatedly held that plaintiffs cannot plead around proximate causation by arguing that their injuries are

18   attributable to a defendant's failure to implement design changes that, according to Plaintiffs, would have

19   prevented third party misuse of an online service.  *See, e.g.*, *Modisette*, 30 Cal. App. 5th at 155–56 (no

20   proximate cause where plaintiff harmed in car accident alleged that Apple should have designed its

21   FaceTime application to prevent use of the app while driving; "the gap between Apple's design [decisions]

22   and the Modisettes' injuries is too great for the tort system to hold Apple responsible"); *Crosby v. Twitter,*

23   *Inc.*, 921 F.3d 617, 620 (6th Cir. 2019) (no proximate cause where plaintiff alleged website could have

24   implemented design changes to "prevent ISIS from rapidly connecting and reconnecting with its

25   supporters" (citation modified)); *Fields II*, 881 F.3d at 750 (website not proximate cause of harm caused

26   merely by providing "accounts and messaging services" to bad actors).  After all, "a contrary holding

27   would effectively hold any sort of communication provider liable for any sort of wrongdoing merely for

28

knowing that the wrongdoers were using its services and failing to stop them.  That conclusion would run roughshod over the typical limits on tort liability[.]"  *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 503 (2023); *cf. also id.* at 489 (rejecting notion that "those who merely . . . transmit emails could be liable for the tortious messages contained therein").

Proximate causation is also absent here because the criminal misconduct of the third-party bad actors, as a matter of law, severs any causal chain.  *See, e.g.*, *Kane v. Hartford Accident & Indem. Co.*, 98 Cal. App. 3d 350, 360 (1979) (generally "a criminal act will be deemed a superseding cause").  It matters not whether some misuse of iCloud by some of its "over 1 billion" users, SAC ¶ 48, was foreseeable—as courts "analyze third party criminal acts differently . . . and [require a] heightened sense of foreseeability." *Wiener v. Southcoast Childcare Ctrs., Inc.*, 32 Cal. 4th 1138, 1149–50 (2004).  And here, the SAC fails to allege that "a *particular and foreseeable* hazard [was] inflicted upon a member of a foreseeable class." *Kane*, 98 Cal. App. 3d at 360 (emphasis added); *see, e.g.*, *id.* (no proximate causation because the specific plaintiff, from defendant's perspective, was an "unforeseeable plaintiff"); ██████████████████████████
████████████████████████████████████████████████████████████
█████████████████████████████ (holding that the "criminal acts of an *unknown* person were a superseding cause" regardless of whether defendant generally knew "that violent crime occurs throughout Philadelphia and even in [its] particular neighborhood" (emphasis added)); *Fields II*, 881 F.3d at 749 (while "[c]ommunication services and equipment are highly interconnected with modern economic and social life, such that the provision of these services and equipment . . . could be expected to cause ripples of harm," the general foreseeability of such "ripples" is insufficient for proximate causation).

Finally, to the extent Plaintiffs' state-law claims are premised on a theory that "NeuralHash" was "negligently designed," SAC ¶ 281, they have failed to allege how the design of a technology that was under consideration and then "cancelled" before it was ever "implement[ed]", *id.*, proximately caused their alleged harms—nor could they.  Similarly, Plaintiffs fail to allege that Apple's general communications to users about NeuralHash's development and subsequent termination, SAC ¶¶ 83, 141–42, somehow caused their injuries based on third parties' circulation of CSAM.

## V.    CONCLUSION

For the reasons stated, Apple respectfully requests that the SAC be dismissed with prejudice.

1

2    DATED: December 19, 2025                                    Respectfully submitted,

3                                                               By:    /s/ Isaac D. Chaput

4                                                               Ashley M. Simonsen (Bar No. 275203)
                                                                Alexander L. Schultz (Bar No. 340212)
5                                                               COVINGTON & BURLING LLP
                                                                1999 Avenue of the Stars
6                                                               Los Angeles, California 90067
                                                                Telephone: (424) 332-4800
7                                                               Facsimile: (424) 332-4749
                                                                Email: asimonsen@cov.com
8                                                               Email: aschultz@cov.com

9

10                                                              Isaac D. Chaput (Bar No. 326923)
                                                                COVINGTON & BURLING LLP
11                                                              Salesforce Tower
                                                                415 Mission Street, Suite 5400
12                                                              San Francisco, California 94105
                                                                Telephone: (415) 591-6000
13                                                              Facsimile: (415) 591-6091
                                                                Email: ichaput@cov.com
14

15                                                              David N. Sneed (*pro hac vice*)
                                                                COVINGTON & BURLING LLP
16                                                              One CityCenter, 850 Tenth Street, NW
                                                                Washington, DC 20001-4956
17                                                              Telephone: (202) 662 5027
                                                                Facsimile: (202) 778-5027
18                                                              Email: dsneed@cov.com

19
                                                                *Attorneys for Defendant Apple Inc.*
20

21

22

23

24

25

26

27

28

DEFENDANT APPLE INC.'S MOTION TO DISMISS SECOND                                Case No. 5:24-cv-08832-NW
AMENDED COMPLAINT